

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00063-CV

WEATHERFORD TEXAS
HOSPITAL COMPANY, L.L.C. D/B/A
WEATHERFORD REGIONAL
MEDICAL CENTER

APPELLANT

V.

KATHERINE F. SMART

APPELLEE

----------

## FROM COUNTY COURT AT LAW NO. 1 OF PARKER COUNTY

----------

## OPINION

----------

## I. Introduction

In a single issue, Appellant Weatherford Texas Hospital Company, L.L.C. d/b/a Weatherford Regional Medical Center (WRMC) appeals the denial of its motion to dismiss Appellee Katherine F. Smart's claim, arguing that Smart's claim is a health care liability claim for which Smart failed to submit an expert

report under the Texas Medical Liability Act (TMLA).  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–.507 (West 2011 & Supp. 2013).  We affirm.

## II.  Background

After visiting a patient in the WRMC emergency room, Smart slipped on a puddle of water in the hospital lobby and fell.  After Smart sued WRMC under negligence and premises defect theories, WRMC filed a motion to dismiss based on her failure to provide an expert report under civil practice and remedies code section 74.351.  The trial court denied WRMC's motion, and this interlocutory appeal followed.

## III.  Discussion

The TMLA defines a "health care liability claim" as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).

The question presented in this case is simple:  Is Smart's slip-and-fall claim, which does not involve any connection to the provision of health care, does not involve a patient, and is purely and simply a premises liability claim occurring in the lobby of a business that qualifies as a healthcare provider, a "health care liability claim" under the TMLA?  A majority of the supreme court has construed the TMLA's definition of health care liability claim such that the phrase

2

"directly related to health care" does not refer to "safety," with the result that "the safety component of HCLCs need not be *directly* related to the provision of health care." *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 186 (Tex. 2012) (emphasis added). What remains undecided, however, is whether a "safety" complaint must have some nexus, however tenuous, to health care to fall under the TMLA.[1]

WRMC argues that the TMLA applies when a hospital visitor's claims concern an alleged departure from accepted standards of safety and that this premises liability lawsuit is covered under the umbrella of the term "safety" in the "health care liability claim" definition. Smart counters that to be covered by that definition, her claim must be at least indirectly related to health care and that it is not. If the hospital is correct, Smart's claim is subject to dismissal under the TMLA for failure to submit an expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b)(2). If Smart is correct, no expert's report is needed and no dismissal warranted. Whether Smith's claim falls under the TMLA is a statutory

---

[1]The TMLA itself is permeated with the idea that it addresses health care provided by health care professionals: its title is "*Medical* Liability," *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–.507; it defines "health care" in terms of acts or treatment provided "for, to, or on behalf of" a patient during the patient's medical care, treatment, or confinement, *see id.* § 74.001(a)(10); and it defines "health care provider" in terms of what one would expect, that is, doctors, nurses, dentists, hospitals, and so forth. *See id.* § 74.001(a)(12)(A)(i)–(viii). Under the TMLA, the definition of "health care liability claim" itself primarily speaks in terms of health care providers or physicians and the treatment they provide. *See id.* § 74.001(a)(13).

3

construction issue of first impression for this court that we review de novo.[2] *See*

*Williams*, 371 S.W.3d at 177.

*Williams*, relied on by WRMC in support of its motion, does not dispose of this question. *See id.* at 179–80, 183–86, 192–93. Instead, *Williams*, which involved a health care employee's claim against his mental health facility employer for injuries arising out of inadequate training, supervision, risk-mitigation, and safety, stands for the propositions that (1) the TMLA "does not require that the claimant be a *patient* of the health care provider for his claims to fall under the Act . . ." and (2) "the safety component of HCLCs need not be *directly* related to the provision of healthcare." *Id.* at 174, 186 (emphases added). The circumstances presented in that case were intrinsically tied to health care—Williams was a professional caregiver injured on the job while supervising a patient suffering from paranoid schizophrenia. *Id.* at 175. The

---

[2]As observed by Justice Boyd in his concurring opinion in *Psychiatric Solutions Inc. v. Palit*,

> So far, the Court's disagreements over the construction of the statute [as to the term "safety"] have been of little consequence, because each time we have held that a claim satisfied the "safety" component we have also held the claim satisfied the "health care" component or that the safety standards were directly related to health care.

No. 12-0388, 2013 WL 4493118, at *7 (Tex. Aug. 23, 2013) (Boyd, J., concurring). In *Palit*, the majority reaffirmed its conclusion in *Williams* that an employee health care provider's claims against his health care provider employer regarding improper security of a psychiatric patient and inadequate safety for the employee were health care liability claims under the TMLA. *Id.* at *1, *3.

patient injured Williams when Williams took him to a smoking area in violation of the hospital's policy that a patient on "unit restriction" not be removed from the psychiatric unit without a physician's direct order. *Id.*

The supreme court stated that the focus in determining whether Williams's claims fell under the TMLA was not the claimant's status but the gravamen of the claims against the health care provider: Can the relevant allegations properly be characterized as health care liability claims under the TMLA? *See id.* at 178, 179. Noting that it had held in *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 850 (Tex. 2005), involving a patient claim against a health care provider, that training and staffing policies, supervision, and patient protection are integral components of a health care facility's rendition of health care services, the court concluded that "Williams'[s] similar allegations constitute[d] HCLCs based on claimed departures from accepted standards of health care." *Id.* at 180–81. The court expanded *Diversicare* to apply to the health care provider's employee—before reaching its "safety" analysis—because Williams's claims were based on his physician-supervisor's exercise of professional judgment about the patient's standard of care and treatment, from which Williams had allegedly departed. *Id.* at 181, 183.

The court further observed that expert testimony, a factor in assessing the nature of a claim against a health care provider, was necessary to prove or refute the merits of Williams's claims, placing those claims under the TMLA. *Id.* at 181–82 ("[W]e now hold that if expert medical or health care testimony is necessary to

5

prove or refute the merits of the claim against a physician or health care provider, the claim is a health care liability claim."). Specifically, Williams's claims would require evidence on proper training, supervision, and protocols "to prevent, control, and defuse aggressive behavior and altercations in a mental hospital between psychiatric patients and employed professional counselors who treat and supervise them" because such training is "integral to the patient's care and confinement." *Id.* at 182.

The court observed that the dispute between Williams and his employer was "at its core, over the appropriate standards of care owed to this mental health professional in treating and supervising a psychiatric patient at the mental hospital, what services, protocols, supervision, monitoring and equipment were necessary to satisfy the standard, and whether such specialized standards were breached" before concluding that Williams's claims were for departures from accepted standards of safety. *Id.* at 182, 186. The court further noted that an expert report detailing the departure from those standards would be relevant in Williams's case. *Id.* at 190; *see also Diversicare*, 185 S.W.3d at 851 (holding that claim in nursing home resident-on-resident assault case was a health care liability claim because "expertise in the healthcare field [is] required to determine the appropriate number, training, and certifications of medical professionals necessary to care for and protect patients in weakened conditions from injury by other patients in a health care facility"); *Wilson N. Jones Mem. Hosp. v. Ammons*, 266 S.W.3d 51, 64 (Tex. App.—Dallas 2008, pet. denied) (concluding that claim

6

was a health care liability claim when patient supervision and restraint was at issue regarding a nonpatient hospital visitor's personal injury claim resulting from an on-premises assault by patient). The same is true in another case cited by WRMC, which was originally addressed in this court. *See Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525, 527 (Tex. 2011) ("Ollie's pleadings show that her action is a safety claim directly related to services meeting her fundamental needs [as a patient].").[3]

Here, however, as some of our sister courts before us, we must confront head-on the question of the nexus between the safety-related complaint and health care. *See E. Tex. Med. Ctr. Reg'l Health Care Sys. v. Reddic*, No. 12-13-00107-CV, 2013 WL 6252702, at *1, *3 (Tex. App.—Tyler Dec. 4, 2013, no pet. h.); *Baylor Univ. Med. Ctr. v. Lawton*, No. 05-13-00188-CV, 2013 WL 6163859, at *1–2 (Tex. App.—Dallas Nov. 25, 2013, pet. filed); *Christus St. Elizabeth Hosp. v. Guillory*, No. 09-12-00490-CV, 2013 WL 6019523, at *2 (Tex. App.—Beaumont Nov. 14, 2013, no pet. h.); *Doctors Hosp. at Renaissance, Ltd. v. Mejia*, No. 13-12-00602-CV, 2013 WL 4859592, at *1, *3–4 (Tex. App.—Corpus Christi Aug. 1,

---

[3]The patient in *Ollie* sued the hospital for negligence for injuries suffered when she slipped and fell on a wet bathroom floor during her post-operative confinement. 342 S.W.3d at 525; *see also St. David's Healthcare P'ship v. Esparza*, 348 S.W.3d 904, 905–06 (Tex. 2011) (holding that patient's claim against hospital for injuries suffered when he slipped and fell on lubricating gel that had fallen on the floor during or immediately after his bladder scan was a health care liability claim because it stemmed from nurse's performance of doctor-ordered scan and her failure to properly dispose of gel used during procedure and the prescribed procedure and its performance were directly related to patient's treatment).

2013, no pet.) (mem. op.); *Ross v. St. Luke's Episcopal Hosp.*, No. 14-12-00885-CV, 2013 WL 1136613, at \*2 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. filed) (mem. op.); *Good Shepherd Med. Ctr.-Linden, Inc v. Twilley*, No. 06-12-00098-CV, 2013 WL 772136, at \*3 (Tex. App.—Texarkana Mar. 1, 2013, pet. denied).

In *Twilley*, the Texarkana court first addressed this issue and determined that a safety claim must have at least an indirect relationship to healthcare to fall under the TMLA. 2013 WL 772136, at \*3. Twilley, a hospital employee, sued the hospital for negligence after he fell from a ladder attached to the hospital building and later tripped and fell over a mound of hardened cement on the hospital's premises. *Id.* at \*1. The hospital moved to dismiss his claim for failure to supply an expert report under the TMLA, which the trial court denied. *Id.* The Texarkana court affirmed the trial court's ruling, holding that there must be some tether between the safety claim and the provision of health care and enumerating several reasons. *Id.* at \*2–7.

The Texarkana court observed that the safety claims in Williams "were more closely connected to health care than simply arising in a health care context" because Williams's claims implicated safety standards required for working with potentially violent schizophrenic patients at a mental health hospital and, in fact, "were indirectly related to healthcare." *Id.* at \*4. In contrast, Twilley was not a recipient of health care at the time of his injury, and his position with the hospital as director of plant operations did not involve health-care-related

8

judgments or require him to report to a health care provider. *Id.* Rather, "[t]he gravamen of Twilley's claims—for OSHA violations—[was] unrelated to the provision of health care to the patient population or to anyone else." *Id.*

The court further observed that "if *every* safety claim against a health care provider were considered a health care liability claim, there would be no need to analyze the nature of the acts or omissions which caused the alleged injuries" as the supreme court had directed in *Williams. Id.* at *5; *see Williams*, 371 S.W.3d at 176 ("In seeking to distinguish ordinary negligence claims from HCLCs, the heart of these cases lies in the nature of the acts or omission causing claimants' injuries and whether the events are within the ambit of the legislated scope of the TMLA.").[4] Likewise, because the supreme court acknowledged in *Loaisiga* that a claim against a medical or health care provider for assault could fall outside of the TMLA, common sense dictated that the same could be true of safety claims unrelated to health care. *Twilley*, 2013 WL 772136, at *6 (citing *Loaisiga*, 379 S.W.3d at 256–57, and stating that if certain assault claims are excluded from TMLA's purview because those claims are inconsistent with medical care, health

---

[4]Indeed, the supreme court has observed that "[i]n some instances the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting (i.e., the physical location of the conduct in a health care facility), the defendant's status as a doctor or health care provider, or both." *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012) (noting that the TMLA creates a rebuttable presumption that a claim is a health care liability claim if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement).

care, or safety or professional or administrative services directly related to health care, it is likewise logical to recognize that "safety" claims completely unrelated to health care are likewise excluded from the ambit of the legislated scope of the TMLA); *see Loaisiga*, 379 S.W.3d at 257 (stating that an assault claim falls outside of the TMLA if the record conclusively shows that there is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact, the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place).

Finally, the Texarkana court observed that requiring an expert report would amount to an exercise in futility on Twilley's facts because

> it would be terribly difficult, if not impossible, to find a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care—OSHA ladder construction and installation and walking surface standards. A medical report here would not shed any light on whether the ladder violated OSHA standards or the concrete mound constituted an unreasonable risk of harm.

2013 WL 772136, at *6 (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b)(1)–(3)).

We find the Texarkana court's reasoning in *Twilley* to be persuasive, sound, and applicable to the case before us. *See id.* at *4–6. The gravamen of Smart's claim is a slip and fall, implicating the question of whether there should be a difference between a safety claim occurring in the lobby of a department

10

store, bakery, or lawyer's office and a safety claim occurring in the lobby of a health care provider when health care services are not involved. *See id.* at *2 (quoting *Williams*, 371 S.W.3d at 178, with regard to focusing on the gravamen of the claim). And as in *Twilley*, it would be impractical to assume that Smart could locate a premises liability expert who also practiced "health care in a field of practice that involves the same type of care or treatment as that delivered by the" health care provider.[5] *See id.* at *6; *cf.* Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b)(1).

Like the majority of our sister courts that have previously addressed this issue, we hold that there must be some connection, even indirect at best, between the safety claim and the provision of health care for the claim to fall under the TMLA's health care liability claim definition. *See Baylor Univ. Med. Ctr.*, 2013 WL 6163859, at *1–2 (following *Twilley* to hold that nurse's claim against hospital for workplace injuries suffered due to sewage backup and maintenance chemicals was not a health care liability claim because it was unrelated to the provision of health care to the patient population or to anyone else); *Christus St. Elizabeth Hosp.*, 2013 WL 6019523, at *2 (concluding that "garden-variety premises case involving a visitor's slip-and-fall" was not a health

---

[5]As further noted by the Texarkana court, if we took WRMC's argument to its "logical extreme," if no connection was required between safety and health care, then a vehicle accident in the hospital parking lot involving a hospital-owned vehicle would fall under the TMLA and require an expert report, which would be patently absurd. *See* 2013 WL 772136, at *5.

11

care liability claim under TMLA and involved a duty "no different than the duties imposed on other businesses that permit visitors to be present on their premises"); *Doctors Hosp. at Renaissance, Ltd.*, 2013 WL 4859592, at *1, *3–4 (following *Twilley* to conclude that Mejia's "garden variety" slip-and-fall premises liability claim, which occurred while she was visiting a patient and slipped and fell on hospital's freshly waxed walkway, was not a health care liability claim); *Twilley*, 2013 WL 772136, at *3; *see also Reddic*, 2013 WL 6252702, at *4–5, *6, *8 (Griffith, J., dissenting) (relying on *Twilley*, noting that "the law regarding a business owner's duty to an invitee determines the contours of this lawsuit, not Chapter 74's requirements for litigating an HCLC," and referencing the distinction made in *Diversicare* between the relationship between premises owners and invitees on one hand and health care facilities and their patients on the other with regard to the involvement of health care). *But cf. Reddic*, 2013 WL 6252702, at *1, *3 (following *Ross* and concluding that plaintiff's slip-and-fall on wet mat in hospital lobby was a health care liability claim as "at the very least, Reddic's claims have a strong indirect relationship to the safe provision of health care for patients" because patients need floors free of hazards); *Ross*, 2013 WL 1136613, at *1–2 (concluding that appellant-visitor's slip-and-fall on hospital property was a health care liability claim after noting that, instead of distinguishing her claim from *Williams*, appellant "argue[d] simply that [the] court should ignore *Williams*" without attempting to distinguish her claim). Because the incident alleged by Smart is totally unrelated to the provision of health care

12

services and is not controlled by the "directly related" language of *Williams*, we overrule WRMC's sole issue.

## IV.  Conclusion

Having overruled WRMC's sole issue, we affirm the trial court's judgment.

/s/ Bob McCoy

BOB MCCOY
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED:  January 23, 2014