**Opinion issued June 17, 2014.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-13-00154-CV**

———————————

## MEMORIAL HERMANN HOSPITAL SYSTEM D/B/A MEMORIAL HERMANN SOUTHWEST HOSPITAL, Appellant

**V.**

## JEWELL HAYDEN, Appellee

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-24879**

## MEMORANDUM OPINION

In this interlocutory appeal,[1] Memorial Hermann Hospital System d/b/a

Memorial Hermann Southwest Hospital appeals a trial court's order denying its

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2013).

motion to dismiss Jewell Hayden's slip-and-fall claim arising out of an injury she suffered while she was assisting a patient at the hospital. The trial court held that Memorial Hermann waived its right to seek dismissal based on Hayden's failure to file an expert report as required for a health care liability claim.[2] Memorial Hermann contends that the trial court abused its discretion by finding waiver and by denying its motion to dismiss. We affirm.

## Background

In April 2010, Jewell Hayden filed this lawsuit against Memorial Hermann, alleging she was seriously injured at the hospital as a result of its failure to properly treat her "very weak and sick" friend whom she had brought there. Hayden maintained that her friend "became violently ill while . . . in the Emergency Room" and the hospital failed to provide her friend with necessary "physical help and medical attention," because it "did not have anyone to assist" her friend. Despite having seen a doctor and several nurses coming in and out of

---

[2] In 2013, the legislature amended section 74.351(a) of the Texas Civil Practice and Remedies Code to require each health care liability claimant to serve an expert report "not later than the 120th day after *each defendant's original answer* is filed." *See* Act of May 26, 2013, 83rd Leg. R.S., ch. 870, § 2 (emphasis added). The new provision applies to all suits filed after September 1, 2013. Hayden filed her claims in 2010 and, therefore, the former section 74.351 still applies. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, §1, 2005 TEX. GEN. LAWS 1590 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2013)). Under the earlier version, health care liability claimants must serve an expert report on each health care provider defendant no later than 120 days after filing their initial petition. *Id.*

2

the friend's waiting room, Hayden was forced to help her friend to the public restroom, where the friend fell on her. Memorial Hermann moved to dismiss, arguing that Hayden had asserted a health care liability claim but had failed to provide an expert report as required by section 74.351 of the Texas Medical Liability Act (TMLA).

In October 2010, while Memorial Hermann's motion to dismiss was pending, Hayden amended her petition. She continued to allege the same background facts; however, she abandoned her original complaint that her friend fell on her and that the hospital breached its duty by failing to provide medical and physical assistance to her friend. Instead, she alleged that "[w]hile attempting to assist" her friend in the restroom in the hospital emergency room, they both slipped and fell. Hayden asserted that the hospital failed to provide "adequate maintenance to ensure the premises was free from slip hazards as a reasonable premises owner would provide," to clean the floor of the premises, or to provide anti-slip mats or rugs "in an area that was known to be wet." She further alleged that the hospital failed to "provide adequate staffing resources" to ensure a safe environment. Hayden simultaneously filed a response to Memorial Hermann's pending motion to dismiss, arguing that her amended claim did not constitute a health care liability claim. Relying on *Marks v. St. Luke's Episcopal Hospital,* 319 S.W.3d 658, 664 (Tex. 2010) and *Diversicare General Partner, Inc. v. Rubio,* 185 S.W.3d 842, 854

(Tex. 2005), Hayden insisted that Memorial Hermann's acts and omissions did not constitute a health care liability claim because they were not inseparably related to the rendition of health care services. Memorial Hermann's pending motion had already been set for the trial court to rule on it, but Memorial Hermann passed on the hearing.

For the next 22 months, Memorial Hermann did not reset its motion to dismiss. Instead, both parties conducted discovery and prepared for trial. As part of that discovery, Memorial Hermann "propounded multiple sets of written discovery" and "participated in ten fact and expert witness depositions." During a July 2011 deposition, Hayden testified that she accompanied her friend to the emergency room where the friend was seen by the doctor and a nurse and that the nurse was told that the friend was unable to use a bed pan. According to Hayden, the friend was "extremely weak" and had to get up from the room in which he was waiting and "walk past the nurses' station" to get to the public bathroom. Hayden's friend walked by himself to the bathroom at least three times and lost control of his bowels in the hallway before he reached the bathroom. During his third trip to the bathroom, Hayden noticed that her friend was in the bathroom "too long," and she knocked on the door to ask whether he needed help. When he did not answer, Hayden entered the bathroom and recalled seeing feces on the floor around the toilet stall occupied by her friend. Hayden was reaching to get some paper towels

when she slipped and fell. Hayden, who was seventy years old, fell and broke both of her legs. One month after Hayden's deposition, Memorial Hermann moved for summary judgment on Hayden's premises liability claim. As part of its motion, Memorial Hermann noted that Hayden had simply "recast" her health care liability claim "as a premises liability lawsuit." The trial court denied summary judgment. Memorial Hermann did not reset its motion to dismiss for hearing.

Approximately one year later, on June 29, 2012, the Texas Supreme Court issued *Texas West Oaks Hospital, L.P. v. Williams*, holding that a hospital employee who sued the hospital for the hospital's failure to provide a safe work environment after the employee was assaulted by a patient was required to comply with the expert-report requirement of TMLA section 74.351. *See* TEX. CIV. PRAC. & REM. CODE § 74.351; *Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 175 (Tex. 2012). Six weeks later, which was four days before the trial court actually called the case to trial, Memorial Hermann filed a second motion to dismiss Hayden's suit, contending that under *Williams* Hayden was required—but failed—to serve a section 74.351 expert report.

In response, Hayden argued that there was "no commonality of fact" between *Williams* and her claims. Hayden further contended that Memorial Hermann's delay in pursuing its second motion to dismiss and its extensive trial preparation waived any right to dismissal.

5

Memorial Hermann excused its failure to pursue its motion based on its pre-*Williams* good faith belief that Hayden's amended petition did not state a health care liability claim subject to the expert report requirement. Hayden does not dispute that statement. Indeed, the parties later stipulated that Memorial Hermann "believed based on the case law at that time, that [the amended p]etition did not assert a health care liability claim and, therefore a motion to dismiss for failure to file an expert report was groundless."

The trial court found, however, that Memorial Hermann had waived its right to seek dismissal for failure to file an expert report and denied Memorial Hermann's motion to dismiss. The trial court also found that Hayden's claim constitutes a health care liability claim, a determination that Hayden does not contest.[3]

Memorial Hermann filed a timely notice of appeal from the trial court's interlocutory order denying the motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(10) (West Supp. 2013).

---

[3] In *Ross v. St. Luke's Episcopal Hospital*, the court of appeals held that a premises liability slip-and-fall claim against a hospital is a "health care liability claim" to which the expert-report requirement applies. No. 14–12–00885–CV, 2013 WL 1136613 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. filed) (mem. op.).

**Standard of Review**

We review a trial court's ruling on a motion to dismiss a health care liability lawsuit pursuant to chapter 74 of the Texas Civil Practice and Remedies Code for an abuse of discretion. *See* TEX. CIV. PRAC. AND REM. CODE ANN. § 74.351; *see also Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex. 2001) (reviewing dismissal under section 74 predecessor statute for abuse of discretion); *Runcie v. Foley,* 274 S.W.3d 232, 233 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (reviewing chapter 74 dismissal for abuse of discretion). We defer to a trial court's factual findings if they are supported by evidence, but where there is no factual dispute, only the legal question of whether the conduct constitutes waiver remains. *See Am. Transitional Care Ctrs.*, 46 S.W.3d at 875; *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, No. 12–0251, 2014 WL 1258307, at *8 (Tex. Mar. 28, 2014) ("Generally, waiver presents a question of fact, but 'when the facts and circumstances are admitted or clearly established, the question [of waiver] becomes one of law.'") (citation omitted); *Jernigan v. Langley*, 111 S.W.3d 153, 156–57 (Tex. 2003) ("[W]hen the surrounding facts and circumstances are undisputed, the question [of waiver] becomes one of law."). When a reviewing court conducts an abuse-of-discretion review, the issue of whether a party waived certain procedural rights—which requires a balancing of "a multitude of potential factors"—constitutes "a question of law for the court, and we do not defer to the

7

trial court on questions of law." *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008). Neither party disputes Memorial Hermann's conduct or the surrounding factual circumstances. Therefore, whether Memorial Hermann waived its right to seek dismissal is a question of law, which we review de novo. *See Crosstex Energy*, 2014 WL 1258307, at *8; *Perry Homes*, 258 S.W.3d at 598 n.102; *Jernigan*, 111 S.W.3d at 156–57.

## Waiver

Memorial Hermann contends that it did not relinquish a known right by waiting until August 16, 2012—over 670 days after Hayden amended her petition to raise a slip-and-fall claim—to move for dismissal for failure to serve a section 74.351(b) expert report.

### A.    Waiver defined

Section 74.351 of the Texas Civil Practice and Remedies Code requires a party who alleges a health care liability claim to serve an expert report on every physician or health care provider against whom liability is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351; *see Heriberto Sedeno, P.A. v. Mijares,* 333 S.W.3d 815, 822–23 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The plaintiff must file the expert report within 120 days of filing the initial petition. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If a timely expert report is not filed, the affected health care provider may file a motion to dismiss, and the court must

8

dismiss the claim with prejudice. *Id.* § 74.351(b). A defendant can waive his right to seek dismissal for failure to file an expert report. *Jernigan*, 111 S.W.3d at 156.

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Id.* at 156–57; *see also Crosstex Energy*, 2014 WL 1258307, at *6. "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right or intentional conduct inconsistent with the right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008); *see also Alli v. Wachovia Bank, N.A.*, No. 01–11–00800–CV, 2013 WL 772946, at *4 (Tex. App.—Houston [1st Dist.] Feb. 28, 2013, no pet.) (mem. op.); *TeleResource Corp. v. Accor N. Am., Inc.*, No. 02–12–00475–CV, 2014 WL 975736, at *5 (Tex. App.—Fort Worth Mar. 13, 2014, pet. filed); *In re Estate of Lynch*, 395 S.W.3d 215, 222 (Tex. App.—San Antonio 2012, pet. denied).[4]

---

[4] This court and others have stated that the second element may be satisfied by constructive knowledge. *See, e.g.*, *Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 103 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *In re C.H.C.*, 396 S.W.3d 33, 43 (Tex. App.—Dallas 2013, no pet.); *Nash v. Beckett*, 365 S.W.3d 131, 144 (Tex. App.—Texarkana 2012, pet. denied); *Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 334 (Tex. App.—Dallas 2011, no pet.); *Fed. Deposit Ins. Corp. v. Attayi*, 745 S.W.2d 939, 946 (Tex. App.—Houston [1st Dist.] 1988, no writ); *see also Perry Homes*, 258 S.W.3d at 602–3 (Johnson, J., concurring in part, dissenting in part) (stating elements of waiver include "an existing right, benefit, or advantage held by a party . . . and the party's actual or constructive knowledge of its existence . . . ."). "Constructive knowledge is a substitute in the law for actual knowledge." *CMH Homes, Inc. v. Daenen*, 15

In *Jernigan*, a medical malpractice case involving a late-filed challenge to the adequacy of an expert report, the Court considered whether the defendant had waived his right to seek dismissal. Whether a party has waived his rights largely depends on the party's intent; an implied intent to waive through a party's actions "must be clearly demonstrated by the surrounding facts and circumstances." *Jernigan*, 111 S.W.3d at 156. When the party charged with waiver says or does nothing inconsistent with the intent to rely on a right, there is no waiver. *Id*. However, inaction may establish waiver if it is for so long a period that it shows an intent to yield a known right. *Id*. at 157.

There is no deadline to file a motion to dismiss for failure to timely serve section 74.351 expert reports. *Jernigan*, 111 S.W.3d at 156; *see also Heriberto Sedeno, P.A.*, 333 S.W.3d at 823–24; *Obstetrical & Gynecological Assocs., P.A. v. McCoy,* 283 S.W.3d 96, 103 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Thus, Memorial Hermann's more than 670-day delay in pursuing it motion to dismiss did not, based upon timing alone, waive its right to dismissal. *See Jernigan*, 111 S.W.3d at 157; *Heriberto Sedeno, P.A.*, 333 S.W.3d at 823, 825 (delaying 912 days held not waiver). Waiver cannot be "based solely on the length of delay"; rather, waiver occurs when a party acts in such a way that it

S.W.3d 97, 102 (Tex. 2000). Constructive knowledge is "knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." BLACK'S LAW DICTIONARY 950 (9th ed. 2004).

intentionally relinquishes a right or intentionally is not claiming it. *In re Universal Underwriters*, 345 S.W.3d 404, 408 (Tex. 2011) (considering waiver for failure to invoke arbitration clause); *see Crosstex*, 2014 WL 1258307, at *8 ("We will not find waiver where a person 'says or does nothing inconsistent with an intent to rely upon such right.'" (quoting *Jernigan*, 111 S.W.3d at 156)). "In other words, while the time period may be instructive in interpreting the parties' intentions, it alone is not the standard by which courts determine" whether waiver has occurred. *In re Universal Underwriters*, 345 S.W.3d at 408. Before we address whether Memorial Hermann's conduct, in addition to its 670-day delay, was inconsistent with claiming a known right, we consider Memorial Hermann's contention that it did not have a known right to obtain dismissal and that such a pleading would have been groundless before *Williams* was decided.

## B. Memorial Hermann had a known right to seek dismissal

Memorial Hermann contends that before *Williams* "the law did not subject slip and falls by a hospital visitor to the [expert report] requirements of Chapter 74." Therefore, before *Williams*, Memorial Hermann believed it had, at most, only "a potential, theoretical, or arguable right," but not a known right to obtain a dismissal for Hayden's failure to file an expert report in a slip-and-fall case. Hayden responds that the Court's holding in *Williams* "did not change" the law; it

11

merely "clarified its interpretation" of a statute that had existed since 2003, "long before . . . Hayden filed her claim."

A party cannot waive a hypothetical right—it must be a "right actually known." *Ulico*, 262 S.W.3d at 778. Stated differently, a party cannot waive a right that does not exist at the time. *Discovery Operating, Inc. v. Baskin*, 855 S.W.2d 884, 887 (Tex. App.—El Paso 1993, no writ).

But Memorial Hermann had more than a hypothetical right before *Williams*; regardless of whether it anticipated that it would prevail on its motion to dismiss, it had a right to *seek* dismissal. Memorial Hermann not only had that right, it exercised that right before passing on a hearing on its motion. To limit the rights that may be waived only to those where the law clearly establishes an ability to prevail is to demand too much.

A party has a right to pursue various legal strategies and in choosing one over another, the party must still bear the consequences of his decision. For example, the enforceability of an arbitration clause, forum-selection clause, or appraisal clause may not be clearly established, but the party may nonetheless waive its right to invoke those clauses. *See, e.g.*, *Perry Homes*, 258 S.W.3d at 593–94 (concluding waiver of right to arbitration); *In re Universal Underwriters*, 345 S.W.3d at 411 (considering waiver of appraisal clause); *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010) ("A party waives a forum-selection clause

by substantially invoking the judicial process to the other party's detriment or prejudice.").

Memorial Hermann contends that it should not be penalized for not asserting a defense it subjectively believed had no basis under the law at the time. But Memorial Hermann's subjective beliefs about the status of the law before the *Williams* holding is not the issue. Rather, the issue is whether it would have had a reasonable basis—that is, one that would not have been groundless—for seeking dismissal of Hayden's claims at the time.

Memorial Hermann argues, based on *Ross v. St. Luke's Episcopal Hospital*, that the *Williams* result could not have been reasonably anticipated. No. 14–12–00885–CV, 2013 WL 1136613, at *2 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. filed) (mem. op.) ("Ross likely never imagined that, under the Texas Supreme Court's construction . . . the Texas Medical Liability Act would swallow her garden-variety slip and fall case. But it has."). This objective-sounding argument is closer to the mark. But, to be more precise, the issue is whether a motion asserting that the law required dismissal of Hayden's slip-and-fall claim would have been groundless before *Williams*, not whether it reasonably could have been expected to prevail. TEX. R. CIV. P. 13. Groundlessness is an objective inquiry that examines whether such a motion would have had "no basis in law or fact" and was "not warranted by good faith argument for the extension, modification, or

reversal of existing law." *Id.* (defining groundless and permitting counsel to file pleading when she believes "after reasonable inquiry the [pleading] is not groundless and brought in bad faith or groundless and brought for purpose of harassment."); *Harrison v. Harrison*, 363 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2012, no. pet.) ("To determine if a pleading was groundless, the trial court uses an objective standard: did the party and counsel make a reasonable inquiry into the legal and factual basis of the claim?" (citation omitted)).[5] *Cf.* Tex. Disciplinary Rules Prof'l Conduct R. 3.01, cmt. 1, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9) (noting law is never static and that advocates must account for "the law's ambiguities and potential for change").

The law before *Williams*—which Memorial Hermann was presumed to know[6]—did not dictate that an amended motion to dismiss would be groundless. Two months before Hayden amended her original petition, the hospital defendant

---

[5] In contrast, whether a pleading is brought in bad faith or for purposes of harassment involves a subjective inquiry. *Parker v. Walton*, 233 S.W.3d 535, 540 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also Thielemann v. Kethan*, 371 S.W.3d 286, 294 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

[6] *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 n.3 (Tex. 1990); *Stewart v. Tex. Lottery Com'n*, 975 S.W.2d 732, 735–36 (Tex. App.—Corpus Christi 1998, no pet.); *Gabaldon v. Gen. Motors Corp.*, 876 S.W.2d 367, 369 (Tex. App.—El Paso 1993, no writ).

in *Williams* made this argument,[7] which Memorial Hermann later adopted, and no one suggested that the *Williams* health care provider's argument was groundless.[8]

---

[7]    *See* Petition for Review at \*3, Tex. W. Oaks Hosp., L.P. v. Williams, 371 S.W.3d 171 (Tex. 2012) (No. 10–0603); *see also* Reply to Response to Petition for Review at \*1–7, Tex. W. Oaks Hosp., L.P. v. Williams, 371 S.W.3d 171 (Tex. 2012) (No. 10–0603).

[8]    We note that it is still unsettled whether *Williams* mandates that *all* slip-and-fall claims be treated as health care liability claims. While Memorial Hermann argues that pre-*Williams*, "the law did not subject slip and falls by a hospital visitor to the requirements of Chapter 74," case law following *Williams* reflects courts' abiding disagreement about whether slip-and-fall claims at a medical facility constitute health care liability claims. *Compare Methodist Healthcare Sys. v. Dewey*, 423 S.W.3d 516, 520 (Tex. App.—San Antonio 2014, pet filed.) (concluding patient visitor's claim that hospital's electronic doors malfunctioned and caused him to fall and break his hip was straightforward premises-liability claim and not health care claim because it was "completely untethered from health care"), *and Weatherford Tex. Hosp. Co. v. Smart*, 423 S.W.3d 462, 467–68 (Tex. App.—Fort Worth 2014, pet. filed) (holding hospital patient visitor claim that he slipped and fell on puddle in lobby not health care claim because "gravamen of Smart's claim [was] a slip-and-fall, implicating the question of whether there should be a difference between a safety claim occurring in the lobby of a department store, bakery, or lawyer's office and a safety claim occurring in the lobby of a health care provider when health care services are not involved" and "totally unrelated to the provision of health care services."), *with Mem'l Hermann Hosp. Sys. v. Galvan*, No. 14–13–00120–CV, 2014 WL 295166, at \*10 (Tex. App.—Houston [14th Dist.] Jan. 28, 2014, no pet. h.) (holding that premises liability claim by hospital visitor arising from slip and fall on water coming from men's restroom constituted health care liability claim because, under *Williams*, claims based on alleged departure from accepted safety standards for protection from danger, harm, or loss are sufficient to constitute health care liability claim and departure need not be directly or indirectly related to health care), *and Ross*, 2013 WL 1136613, at \*1 (holding slip-and-fall premises claim by patient visitor constituted health care liability claim because under *Williams*, "a connection between the act or omission and health care is unnecessary" and "[a]n allegation pertaining to safety, standing alone and broadly defined, is sufficient."). These cases demonstrate that claims arising from a slip-and-fall at a hospital may or may not be treated as a health care liability claim. Yet the right to pursue that result is clear, as it was pre-*Williams*. The test for being a "known legal right" cannot be whether a motion will succeed, but whether a motion would be groundless. *Cf.* Tex. Disciplinary Rules Prof'l

Memorial Hermann could have argued—as the health care provider did in *Williams*—that health care liability claims include *any* claims of departure from safety standards, including claims brought by a non-patient. *See Williams*, 371 S.W.3d at 186.[9]

Memorial Hermann's initial motion to dismiss would not have been legally groundless even after Hayden amended her petition. A court is not bound by the legal theories in a plaintiff's pleadings in determining whether a claim is a health care liability claim. *Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525, 527 (Tex. 2011). The "focus in determining whether claims come under the TMLA is not the status of the claimant, but the gravamen of the claim or claims against the health care provider." *Williams*, 371 S.W.3d at 178. The focus is "on *the facts underlying the claim*, not the form of, or artfully-phrased language in, the plaintiff's pleadings describing the facts *or legal theories asserted*." *Loaisiga v.*

---

Conduct R. 3.01, cmt. 1, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9) (noting that "the law is not always clear and never is static. Accordingly, in determining the scope of advocacy, account must be taken of the law's ambiguities and potential for change."). Otherwise, Memorial Hermann could continue to not pursue a motion to dismiss even after *Williams* given the current split in case law.

[9] The health care provider in *Williams* was not alone in believing that the TMLA might reach premises liability claims that did not directly involve patient care. *See* Paula Sweeney, *Medical Malpractice in Texas,* 2010, State Bar of Tex. Prof. Dev. Program, Advanced Medical Malpractice Course, 130–31 (2010) (asserting "that virtually all conduct occurring on the premises of a health care provider, or involving health care defendants, equates to health care" and observing that "[a] host of attempts to evade 4590i have failed.").

*Cerda*, 379 S.W.3d 248, 255 (Tex. 2012) (citing *Yamada v. Friend*, 335 S.W.3d 192, 196–97 (Tex. 2010)) (emphasis added); *see Diversicare*, 185 S.W.3d at 847, 854.

Hayden did not allege that she fell while walking through a waiting room or a common area. The "gravamen" of her claim is different than a slip-and-fall "occurring in the lobby of a department store, bakery, or lawyer's office," and is different than a "safety claim occurring in the lobby of a health care provider when health care services are not involved." *Weatherford Tex. Hosp. Co. v. Smart*, 423 S.W.3d 462, 467 (Tex. App.—Fort Worth 2014, pet. filed) (construing *Williams*). Hayden fell while attempting to physically assist a "violently ill" and "very weak" patient to a bathroom while he was undergoing health care treatment in the emergency room of a hospital. She even alleged that the hospital failed to "provide adequate staffing resources" to ensure a safe environment—a not uncommon medical malpractice claim. Hayden's allegations asserted a causal link between Hayden's injury and the level of competence of the hospital staff, implying that understaffing compromised her safety while visiting the hospital. *See, e.g.*, *Diversicare*, 185 S.W.3d at 845 (concluding that complaint, among others, that health care provider failed "to budget for, hire, and train a sufficient number of qualified direct health care staff" was health care claim). These assertions are not

"totally unrelated to the provision of health care services." *Weatherford*, 423 S.W.3d at 468.

The legislative history of chapter 74 and related caselaw further support the conclusion that a motion to dismiss Hayden's claims would not have been groundless before *Williams.* Article 4590i, the predecessor statute of Texas Civil Practice and Remedies Code Chapter 74, defined a health care liability claim as a "cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury or death of the patient . . . ." Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(d), (e), 1995 TEX. GEN. LAWS 985, 986, *repealed by* Act of June 2, 2003, 78th Leg., R. S., ch. 204, § 10.09, 2003 TEX. GEN. LAWS 847, 884. Under article 4590i, the term "safety" was not defined, but the claim had to stem from injury or death to a patient. *See id.* § 1.03; *see also Diversicare*, 185 S.W.3d at 855 (noting statute did not define "safety").

In 2003, when article 4590i section 1.03 was recodified as Civil Practice and Remedies Code section 74.001, the Legislature defined a health care liability claim as a claim against a health care provider for "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, *or safety* or professional or administrative services directly related to health care,

18

which proximately results in injury to or death of a *claimant*, whether the claimant's claim or cause of action sounds in tort or contract." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West Supp. 2013) (emphasis added). The term "safety" remained undefined, but the statute was broadened to include injury to a "claimant." *See id*. The term "claimant" is defined as "a person" who seeks recovery or damages in a health care liability claim. *See id.* § 74.001 (a)(2) (West Supp. 2013).

Two years later, the Texas Supreme Court explained in *Diversicare* that former article 4590i "did not define" the term "safety," as it related to the definition of a health care liability claim, and the Court applied the "commonly understood meaning of safety" as "the condition of being 'untouched by danger . . . harm or loss.'" *Diversicare*, 185 S.W.3d at 855 (citing BLACK'S LAW DICTIONARY 1336 (6th ed. 1990)). The Court recognized that the "Legislature's inclusion within the scope of [4590i] claims based on breaches of accepted standards of safety expand[ed] the scope of the statute beyond what it would be if it only covered medical and health care." *Id. Diversicare* was decided seven years before *Williams*.

In *Williams*, the Court noted that the term "safety" remained undefined in section 74.001, and, accordingly, applied the definition used in *Diversicare*. *Williams*, 371 S.W.3d at 183–84 (citing *Diversicare*, 185 S.W.3d at 855 (applying the "commonly understood meaning of safety" as "the condition of being

19

'untouched by danger . . . harm or loss.'")). The *Williams* Court again recognized that the Legislature's "inclusion of safety 'expanded the scope of the statute beyond what it would be if it only covered medical and health care.'" *Id.* at 184. It also held that "the safety component of [health care liability claims] need not be directly related to the provision of health care . . . ." *Id.* at 186. Additionally, the plaintiff's status as an injured employee, instead of a patient, did not determine the nature of the claim. *Id.* at 188–89. Under *Williams*, the focus shifted to whether the hospital's alleged misconduct involved a departure from accepted standards of safety. *Id.* at 179, 185.

Based on *Diversicare*, the text of chapter 74, and Hayden's claim of inadequate staffing resources to ensure a safe environment, a motion to dismiss that contended that Hayden's claim was a health care liability claim because it was "for . . . [a] claimed departure from accepted standards of . . . safety . . . which proximately results in injury to . . . a claimant" would not have been groundless before *Williams*. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (stating elements of health care liability claim).

Notably, in its briefing to the trial court in support of its second motion to dismiss, Memorial Hermann likened Hayden's claims to *Omaha Healthcare Center v. Johnson*, 344 S.W.3d 392, 394 (Tex. 2011), which was issued the year before *Williams*. In *Omaha*, a nursing home patient was bitten by a spider while at

20

the nursing home and died. The patient's family brought a premises liability claim, alleging that the nursing home had failed to maintain its premises in a safe condition. Memorial Hermann explained that the *Omaha* court found the plaintiff's claim was "*directly related to health care*" and "fell *within* the statutory definition of a health care liability claim." *Id.* at 395 (emphasis added). In its briefing, Memorial Hermann likewise asserted, "[L]ike Ms. Hayden in this case, the claim [in *Omaha*] was brought as a premises liability claim against the facility for failing to keep the facility safe." Memorial Hermann's reliance on the *Omaha* case one year before it set its own motion to dismiss for hearing further supports the conclusion that Memorial Hermann had a known right to seek dismissal.

Further, a plaintiff cannot recast a health care liability claim as another cause of action to avoid the statute. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). Nevertheless, Memorial Hermann passed on the hearing on its motion to dismiss and instead sought final judgment by filing a summary judgment motion, in which it contended that Hayden had "recast the case as a premises liability lawsuit." The same argument would have supported its pending motion to dismiss.

We conclude that, even after Hayden amended her petition, Memorial Hermann could have pursued its motion to dismiss and that the pleading would not have been groundless before *Williams*. Accordingly, we hold that, before *Williams*, Memorial Hermann had a known right to seek dismissal.

21

## C. Conduct inconsistent with the right to seek dismissal

Because Memorial Hermann had a known right to seek dismissal, we turn to consider whether its conduct demonstrated that it waived that right. Memorial Hermann argues that it did not engage in conduct inconsistent with a known right. And we recognize that engaging in pretrial preparation, including conducting discovery, by itself does not constitute waiver. *See Crosstex Energy*, 2014 WL 1258307, at \*9 (citing *Jernigan*, 111 S.W.3d at 157) (holding that propounding 11,000 pages of discovery and filing answer "inconsequential" in determining whether engagement of judicial process constitutes intent to waive rights). Hayden, however, contends that Memorial Hermann did not just participate in the litigation process, but it conducted itself in a manner inconsistent with pursuing dismissal under section 74.351(b).

Before Memorial Hermann filed its second motion to dismissal for a failure to file an expert report, the parties actively engaged in extensive trial preparations. According to the parties' stipulation, Memorial Hermann moved for summary judgment (which was denied); "propounded multiple sets of written discovery to [Hayden]"; participated "in ten fact and expert witness depositions" (the majority of which Memorial Hermann initiated); moved for a trial setting in February 2012; submitted trial preparation documents, including briefs, a jury charge, motion in limine, facts witness lists, and exhibit lists; and announced ready for trial on two

22

occasions. Hayden argues these facts, along with Memorial Hermann's decision to "abandon" its original motion to dismiss, demonstrate conduct inconsistent with the right to seek dismissal and, therefore, resulted in waiver.

In *Jernigan*, the court of appeals found waiver of the right to dismissal based on the health care provider's (1) waiting 646 days after the lawsuit was filed, (2) undertaking discovery, (3) filing a motion for summary judgment based on charitable immunity, and (4) filing an amended answer that deleted language in the original answer specifically referencing a failure to satisfy statutory prerequisites. *Langley v. Jernigan*, 76 S.W.3d 752, 756–57 (Tex. App.—Waco 2002), *rev'd*, 111 S.W.3d 153 (Tex. 2003). The Supreme Court found this conduct insufficient to constitute waiver. *Jernigan*, 111 S.W.3d at 156–57. The Court reasoned that "attempting to learn more about the case" by requesting documents and submitting interrogatories is not inconsistent with moving for dismissal for failure to meet the expert-report requirement and observed that most of the discovery was conducted by the plaintiff. *Id.* at 157; *see Crosstex Energy*, 2014 WL 1258307, at *8–9 (applying same standard of waiver). Moving for summary judgment on other grounds also did not waive the right to dismissal under section 74.351. *Jernigan*, 111 S.W.3d at 157; *see also Seifert v. Price*, No. 05–08–00655–CV, 2008 WL 5341045, at *2 (Tex. App.—Dallas, Dec. 23, 2008, pet. denied) (mem. op.). "Waiver is largely a matter of intent." *Jernigan*, 111 S.W.3d at 156; *see also*

*Crosstex Energy*, 2014 WL 1258307, at *8 (same). And the totality of the circumstances in *Jernigan* did not "clearly demonstrate" an intent to not claim a known right. *Jernigan*, 111 S.W.3d at 156–57; *see also Motor Vehicle Bd. of Tex. Dept. of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999).

Hayden argues that the facts here are stronger than *Jernigan* and likens Memorial Hermann's conduct to that of the defendant health care provider in *In re Sheppard,* 197 S.W.3d 798 (Tex. App.—El Paso 2006, orig. proceeding). In *Sheppard*, the court of appeals held that "extensive participation in discovery" along with a delay of 1,183 days were sufficient, without more, to demonstrate that the defendant had waived the right to seek dismissal for failure to meet the expert-report requirement. 197 S.W.3d at 801–02. The defendant sent discovery requests after receiving the plaintiff's expert report, designated its own experts, deposed the plaintiff and her experts, allowed the plaintiff to depose its experts, and announced ready for trial.[10] *Id*. at 801–02. The court distinguished *Jernigan* on the ground that this discovery involved "far more" than learning about the case and was not initiated solely by the plaintiff. *Id*. at 802. Under the totality of the circumstances

---

[10] The opinion does not indicate whether a hearing was held on the motion to dismiss. It only states that the defendant health care provider permitted its experts to be deposed after it had filed its motion to dismiss and before the trial court granted the motion. *See In re Sheppard*, 197 S.W. 3d 798, 801–2 (Tex. App.—El Paso 2006, orig. proceeding).

of that case—where discovery had been completed and the defendant had announced ready for trial—the health care provider had engaged in conduct "inconsistent with an intent to rely upon the right to seek dismissal." *Id.*; *see also Apodaca v. Miller*, 281 S.W.3d 123, 127 (Tex. App.—El Paso 2008, no pet.) (noting that implicit waiver is only inferred by Texas courts in extreme circumstances, and identifying announcement of ready for trial as one of those circumstances); *cf. Martinez v. Lakshmikanth*, 1 S.W.3d 144, 148–49 (Tex. App.—Corpus Christi 1999, pet. denied) (analyzing waiver under section 74 predecessor statute, holding waiver of right to dismissal may be implied when health care provider defendant delays moving for dismissal until after case is disposed of on other grounds).

The totality of the circumstances in this case is stronger than those in *Sheppard*. First, Memorial Hermann not only conducted most of the discovery—it completed its discovery. But more importantly, Memorial Hermann announced that it was ready for trial twice before pursuing its motion to dismiss, and it did not move to dismiss the case again until "four days prior to the trial court actually calling the case to trial." Memorial Hermann had filed a motion to dismiss 22 months earlier and intentionally did not pursue it. Effectively, Memorial Hermann strategically decided not to pursue its initial motion; instead, it attempted to obtain a final judgment through other means. *Cf. Spinks v. Brown*, 211 S.W.3d 374, 379

(Tex. App.—San Antonio 2006, no pet.) (holding health care provider waived rights by "strategic[ally]" choosing not to pursue motion to dismiss).

Viewing the totality of the circumstances, we conclude that the trial court did not err in denying "on the ground of waiver" Memorial's motion to dismiss Hayden's health care liability claim for failure to file an expert report. *See Jernigan*, 111 S.W.3d at 156 (holding intent must be discerned by reviewing "the surrounding facts and circumstances"); *see also Perry Homes*, 258 S.W.3d at 591 (stating that "courts should look at the totality of the circumstances" in determining whether there is waiver); *cf. Murphy v. Gutierrez*, 374 S.W.3d 627, 633, 635 (Tex. App.—Fort Worth 2012, no. pet.) (stating that, in analyzing whether defendant waives right to dismissal for failure to file expert reports for claims against architects and similar professional engineers, court should examine totality of circumstances).

Accordingly, we overrule Memorial Hermann's sole issue.

## Conclusion

We affirm the trial court's interlocutory order.


Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

26