OPINION
Opinion by
Chief Justice MORRISS.
Sharon Morrison was employed by Whispering Pines Lodge (a nursing home) in 2009 when, as she was retrieving towels for a resident from a resident shower area, she slipped and fell in an area that had just been mopped by another nursing home employee, injuring her left forearm. Morrison sued Whispering Pines in 2011 for her injury, in what she believed to be a simple premises liability matter. In February 2013, Whispering Pines filed a motion to dismiss pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code, asserting that, because Morrison’s claim was a health care liability claim (HCLC) and Morrison did not file an expert report as required by the Texas Medical Liability Act (TMLA or Act), such claim should be dismissed. The trial court granted the motion, dismissed the suit, and awarded Whispering Pines’ net attorneys’ fees of $76.50.[1] Because the claims here are at least indirectly related to health care, we affirm the judgment of the trial court.
A “health care liability claim” is
a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant’s claim or cause of action sounds in tort or contract.
Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13) (West Supp.2013). If a claim falls within this definition, “a claimant shall, not later than the 120th day after the original petition was filed, serve on each party or the party’s attorney one or more expert reports.... ” Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a) (West Supp. 2013).
We typically review a trial court’s order granting a motion to dismiss for failure to timely file an expert report under Section 74.351(a) for an abuse of discretion. See id.; Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877-78 (Tex.2001); Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley, 422 *330 S.W.3d 782, 784 (Tex.App.-Texarkana 2013, pet. denied). A determination, as here, of whether a claim falls within the purview of the Act is a question of law and is thus reviewed de novo. Tex. W. Oaks Hosp., LP & Tex. Hosp. Holdings, LLC v. Williams, 371 S.W.3d 171, 177 (Tex.2012).
Morrison’s original petition alleges that, “[w]hile performing duties within the course and scope of her employment, [she] slipped and fell on the premises of Whispering Pines Lodge in an area that had been mopped by another employee of [Whispering Pines] thereby creating a dangerous condition for [herself] and others.” Moreover, “Whispering Pines Lodge failed to warn [ ] Morrison of the dangerous condition or to make the dangerous condition reasonably safe.” The issue here centers on whether Morrison’s claim concerns “a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care.” See Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13).
The Texas Supreme Court’s analysis in Williams has, to a large extent, refocused the debate on what type of claims fall within the purview of the Act. See Williams, 371 S.W.3d 171. Williams is therefore central to our analysis. In that case, the high court faced the question of whether “the claims of an employee against his employer, both of whom [were] health care providers, alleging injuries arising out of inadequate training, supervision, risk-mitigation, and safety in a mental health facility, constitute” HCLCs. Id. at 174.[2] In concluding that such claims were HCLCs, the court explained that, in distinguishing ordinary negligence claims from HCLCs, the court must look to “the nature of the acts or omissions causing claimants’ injuries and whether the events are within the ambit of the legislated scope of the TMLA.” Id. at 176. We are not to consider whether the claimed injury “arose from treatment commonly understood to be some type of medical or health care .... ” Id. at 179. Likewise, no consideration is given to whether “the incident causing the injury would have been a common law negligence claim.” Id. Rather, the issue is whether the claim falls beneath “the umbrella fashioned by the Legislature’s promulgation of the TMLA.” Id. Williams held, inter alia, that “the safety component of HCLCs need not be directly related to the provision of health care.... ” Id. at 181,186[3].
Morrison cites caselaw to argue that this case is an ordinary negligence case. See Twilley, 422 S.W.3d 782; Doctors Hosp. at Renaissance, Ltd. v. Mejia, No. 13-12-00602-CV, 2013 WL 4859592 (Tex.App.Corpus Christi Aug. 1, 2013, pet. filed) (mem. op.). Twilley involved a negligence claim against a hospital, premised on alleged Occupational Safety and Health Act *331 violations, for injuries allegedly sustained in a fall from a ladder attached to the building and a fall over a mound of hardened cement on the hospital’s premises. This Court upheld the trial court’s denial of the hospital’s Chapter 74 motion to dismiss. In reaching this conclusion, we determined that Williams did not include as HCLCs any “safety claims that are completely untethered from health care.... [T]he safety claims in Williams were at least indirectly related to health care.” Twilley, 422 S.W.3d at 788. “The simple fact that an injury occurred on a health care provider’s premises is not enough.” Id. at 788. We reasoned that a safety claim under the TMLA must “have at least an indirect relationship to health care.” Id. Otherwise, “the high court’s directive that ordinary negligence claims are distinguished from health care liability claims by focusing on the nature of the acts or omissions causing the alleged injuries” would be rendered meaningless. Id. Because Twilley’s safety claim was entirely unrelated to health care, it did not fall within the purview of the TMLA. Id. at 788-89.[4] The Texas Supreme Court had the opportunity to review Twilley, but denied the petition for review.
Mejia involved a claim against a hospital by a visitor who slipped and fell on a freshly waxed walkway in the hospital, after having been assured that it was safe. Mejia, 2013 WL 4859592, at *1. Mejia sued the hospital, alleging, among other things, that the condition of the premises was “unreasonably dangerous” and “unsafe.” Id. The appellate court ruled that Chapter 74 did not apply. Id. The primary issue in Mejia was whether the alleged slip and fall claim was properly classified as a health care liability claim under the “safety” prong of Section 74.001(a)(13). See Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13). The Corpus Christi court recognized that Williams stopped short of concluding that all premises liability claims involving a health care provider are health care liability claims. Accordingly, the Mejia court applied Williams “narrowly to govern cases that involve safety claims that are indirectly related to health care.” Mejia, 2013 WL 4859592, at *2. However, because Mejia’s claim did not fall within the category of claims indirectly related to health care, it was not a health care liability claim. Instead, the court found that Mejia’s claim was simply a “garden variety” slip-and-fall case, holding that “ ‘safety’ claims like those pled by Mejia, which are completely unrelated to health care, are excluded from the scope of the TMLA.” Id. at *3-4.
Whispering Pines contends this case is different from Twilley and Mejia, primarily because the safety claims in those cases were not even indirectly related to health care and, thus, were not health care liability claims under the TMLA. Here, however, Whispering Pines contends its alleged negligence was directly related to health care services that Whispering Pines is required by law to provide to its residents. It thus contends that, at the very least, the acts were indirectly related to health care, thereby causing Morrison’s claims to fall within the scope of the TMLA, even in light of the holdings in Twilley and Mejia.
Morrison alleges she suffered injuries as a result of Whispering Pines’ failure to *332 keep the premises safe from harm. Unlike other categories of claims falling under the scope of the TMLA, the term “safety” is not defined in the statute. See Tex. Civ. Prac. & Rem.Code Ann. § 74.001 (West Supp.2013). The Texas Supreme Court has defined “safety” broadly, according to its commonly understood meaning, as the condition of being “untouched by danger; not exposed to danger; secure from danger, harm or loss.” Williams, 371 S.W.3d at 183 (citing Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 855 (Tex.2005)). If this claim is a HCLC at all, it falls under the safety component, indicating an alleged departure from the accepted standards of safety. See Williams, 371 S.W.3d at 186. Williams instructs that “the safety component of the HCLCs need not be directly related to the provision of health care.” Id.[5] In Twilley, this Court held that safety claims which are completely unrelated to health care do not fall within the scope of the TMLA. Twilley, 422 S.W.3d at 788.
Since Twilley, many cases have touched on the subject at hand. Just within the last couple of weeks, three cases have been decided concerning the question of when a safety claim is a HCLC. On January 23, 2014, our sister court in Fort Worth ruled that a claim by a hospital visitor who fell in the hospital lobby was not a HCLC because there was not even an indirect connection between the visitor’s fall in the lobby and the provision of health care. See Weatherford Tex. Hosp. Co. v. Smart, 423 S.W.3d 462, 463-68 (Tex.App.Fort Worth 2014, no pet. h.). Five days later, another sister court, the Fourteenth District Court of Appeals in Houston, ruled apparently to the contrary, finding a visitor’s slipping on water on the floor of a hospital hallway was a HCLC. See Mem’l Hermann Hosp. Sys. v. Galvan, No. 14-13-00120-CV, - S.W.3d -, -, 2014 WL 295166 (Tex.App.-Houston [14th Dist.] Jan. 28, 2014, no pet. h.). Most recently, our sister court in San Antonio held that the claim of a hospital visitor on crutches who fell when the automatic entrance door to the hospital closed on him was not a HCLC. See Methodist Healthcare Sys. of San Antonio, Ltd., LLP v. Dewey, 423 S.W.3d 51 (Tex.App.-San Antonio 2014, no pet. h.). The Smart and Dewey rulings seem to arise from what are purely premises-liability claims, unrelated to the provision of health care except the owner/operator and overall purpose of the facility. Galvan seems inconsistent with the other two recent cases, unless the particular location of the accident, being in a hospital hallway, could serve to distinguish it from the other two. Notwithstanding the uncertainties in the development in how the courts interpret safety claims, we conclude that, if there is at least an indirect connection between Morrison’s claim and the provision of health care, we are bound to rule that the claim is a HCLC. The issue we must decide, then, is whether Morrison’s safety claims are related, even indirectly, to health care.
Whispering Pines relies on Omaha Healthcare Center, LLC v. Johnson, 344 S.W.3d 392 (Tex.2011), for the proposition that Morrison’s safety claim is related to health care. In that case, Johnson sued Omaha Healthcare Center (Omaha) (a nursing home) on behalf of the estate of her deceased sister, who was a resident of the nursing home when she was bitten by *333 a brown recluse spider and died. Johnson alleged that Omaha “failed to maintain the premises in a safe condition by failing to inspect the premises, failing to properly clean the premises, failing to institute proper pest control policies, and failing to prevent insect and spider infestations.” Id. at 395. The high court concluded that Johnson’s claim was a safety claim directly related to health care and was therefore a health care liability claim.[6] In arriving at this conclusion, the court recognized that nursing homes “are required to take actions to provide ‘quality care’ which includes things such as safety of the environment.” Id. (citing Tex. Health & Safety Code Ann. § 242.001(a)(1), (8) (West 2010)).[7] Moreover, services provided to nursing home residents include meeting the residents’ fundamental needs. Meeting residents’ fundamental needs necessarily includes the protection of their health and safety. Id. at 394-95 (citing 40 Tex. Admin. Code Ann. § 19.1701 (West, Westlaw current through Jan. 24, 2014); 40 Tex. Admin. Code Ann. § 19.401(b) (West, Westlaw current through Jan. 24, 2014)).[8] Because “health care” includes “any act performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s ... confinement,” Johnson’s allegations that Omaha did not protect the resident from danger or harm while caring for her was a health care liability claim. Johnson, 344 S.W.3d at 395 (quoting Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(10)) (emphasis added).
Whispering Pines contends that, because the housekeeping services at issue here were required by law in order to maintain a clean, safe, and sanitary environment for nursing home residents, the cleaning of a resident shower area in this case falls within the broad definition of “health *334 care.” That is, the cleaning was done by a health care provider (Whispering Pines) “for, to, or on behalf of a patient during the patient’s ... confinement.” See Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(10). As in Johnson, Whispering Pines was required by Texas law to provide a safe and clean environment for its residents. See Tex. Health & Safety Code Ann. § 242.001(a)(1), (8); 40 Tex. Admin. Code Ann. §§ 19.1701, 19.401(b). Certainly, keeping resident shower areas clean and sanitized for the benefit of nursing home residents is part and parcel of maintaining a safe, sanitary, and comfortable environment. See 40 Tex. Admin. Code Ann. § 19.1701(8) (nursing home must provide safe, functional, sanitary, and comfortable environment for residents). Whispering Pines therefore contends that Morrison’s safety claim is at least indirectly related to health care.
We are to look to the substance of the claim to determine whether the claim falls beneath “the umbrella fashioned by the Legislature’s promulgation of the TMLA.” Williams, 371 S.W.3d at 179. The injury here allegedly occurred as a result of Whispering Pine’s actions in attempting to carry out its legal duty to provide a sanitary environment for its residents. Johnson recognizes a nursing home’s broad duty to provide health care for its- residents, including things such as safety and cleanliness of the environment. Johnson, 344 S.W.3d at 395; see also Rubio, 185 S.W.3d at 849-50 (fundamental needs of residents include sanitary living conditions). Here, one Whispering Pines employee was working to keep a shower area safe and clean for the benefit of its residents, as required by Texas law, while another employee, Morrison, retrieved a towel needed by another resident.
Unlike in Twilley, we cannot say Morrison’s safety claim is totally untethered from health care (see Twilley, 422 S.W.3d at 788),[9] since the State of Texas requires *335 Whispering Pines to provide housekeeping services and a safe, clean, and sanitary environment to its residents. See 40 Tex. Admin. Code § 19.705; Johnson, 344 S.W.3d at 395. Because Morrison’s safety claim is at least indirectly connected to what can be classified as actions involving health care, we hold that her claim is a HCLC.[10]
Morrison contends that her claims should not fall within the purview of the TMLA because medical expertise is not required to explain how she slipped and fell on the wet shower room floor. A fallacy of that contention is that medical expertise was also not needed to explain how a spider could come to bite a nursing home resident, yet that claim was determined by the Texas Supreme Court to be a HCLC. See Johnson, 344 S.W.3d 392. Plus, the expert report requirement of Section 74.351 is only a threshold requirement for the continuation of the lawsuit, not a requirement for recovery. See Murphy v. Russell, 167 S.W.3d 835, 838 (Tex. 2005) (per curiam) (“The fact that in the final analysis, expert testimony may not be necessary to support a verdict does not mean the claim is not a health care liability claim.”); see also Williams, 371 S.W.3d at 182 (claim may still be health care liability claim when expert testimony not required).
Morrison further contends that, in this context, it will be impossible to find a qualified expert. As this Court recognized in Twilley, an expert opinion regarding whether a health care provider departed from accepted standards of health care or safety must come from an expert qualified to testify under the requirements of Section 74.402. Twilley, 422 S.W.3d at 789 (citing Tex. Crv. Prac. & Rem.Code Ann. § 74.351(r)(5)(B) (West 2011)). We recognized that “it would be terribly difficult, if not impossible, to find a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care — OSHA ladder construction and installation and walking surface standards.” Id.
The expert dilemma in Twilley, though, arose from the fact that the safety claims in that case were totally unrelated to health care. Because the safety claims in this case are at least indirectly related to health care, the difficulty in locating an appropriate expert should be no different than in any other TMLA case. Here, for example, Whispering Pines was bound to comply with health and safety laws and regulations enacted by the Legislature to ensure that nursing home facilities aim to provide the highest level of care to their residents. Whispering Pines, a health care provider, is the defendant in this case. Compliance with the expert report requirement could be accomplished by retaining a physician with the requisite training, education, and knowledge necessary to provide an opinion concerning the acceptable standard of health care and/or safety required for a nursing home facility. See Tex. Civ. Prac. & Rem.Code § 74.402(b)(1) (West 2011).
We affirm the judgment of the trial court.
Dissenting Opinion by Justice CARTER.

. Because Morrison incurred discovery expenses between the deadline for filing disposi-tive motions and the date Whispering Pines hied its motion to dismiss, the trial court offset Morrison's attorneys’ fees with those discovery expenses.

. In accordance with Williams, the absence of a health care relationship between the claimant and the health care provider is not a barrier to the inclusion of a claim within the Legislature's definition of health care liability claims. Williams, 371 S.W.3d at 179.

. “Health care” is "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.” Tex. Civ. Prac. & Rem.Code Ann. § 74.00 l(a)( 10) (West Supp.2013). Because Section 74.001(a)(13) (defining health care liability claim) incorporates the definition of "health care,” such a claim must involve a physician-patient relationship. Williams, 371 S.W.3d at 181. A claim involving employee supervision of a patient can qualify under the health care prong of Section 74.001(a)(13) because the patient’s presence at the facility is due to their patient-physician relationship. Id.

. In reaching this conclusion, we relied, in part, on Loaisiga v. Cerda, 379 S.W.3d 248, 256 (Tex.2012), decided after 'Williams. In that case, the court indicated that the Legislature could not have intended for the expert-report requirement to apply to claims that were wholly separable from the rendition of medical care, health care, safety, or professional or administrative services directly related to health care, even though the conduct occurred in a health care context. Id. at 257.

. The Texas Supreme Court recently reiterated its opinion in Williams, holding that an employee’s claims against its health care provider employer alleged a departure from accepted safety standards in a psychiatric hospital when the employee was injured while attempting to restrain a psychiatric patient. Psychiatric Solutions, Inc. v. Palit, 414 S.W.3d 724, 725 (Tex.2013).

. A significant distinction between this case and Johnson is the fact that, in Johnson, a nursing home resident was injured from an unsafe premises condition, while, here, a nursing home employee was injured as a result of such a claim. Williams, however, teaches that the change from "patient” to "claimant” in the 2003 amendment to the HCLC definition in the TMLA now includes an employee of a health care provider who brings an HCLC. Williams, 371 S.W.3d at 179.

. The text of this statute, relating to the scope, purpose, and implementation of rules pertaining to convalescent and nursing homes and related institutions, provides:
(a) It is the goal of this chapter to ensure that institutions in this state deliver the highest possible quality of care. This chapter, and the rules and standards adopted under this chapter, establish minimum acceptable levels of care. A violation of a minimum acceptable level of care established under this chapter or a rule or standard adopted under this chapter is forbidden by law. Each institution licensed under this chapter shall, at a minimum, provide quality care in accordance with this chapter and the rules and standards. Components of quality of care addressed by these rules and standards include:
(1) quality of life;
(2) access to care;
(3) continuity of care;
(4) comprehensiveness of care;
(5) coordination of services;
(6) humaneness of treatment;
(7) conservatism in intervention;
(8) safety of the environment;
(9) professionalism of caregivers; and
(10) participation in useful studies.
Tex. Health & Safety Code Ann. § 242.001(a)(l)-(10) (West 2010).

.Section 19.1701 sets forth standards for the physical environment of a nursing home facility for licensure and Medicaid certification. Subsection 8 provides, "The facility must provide a safe, functional, sanitary, and comfortable environment for residents, staff and the public.” 40 Tex. Admin. Code Ann. § 19.1701(8). Section 19.401(b) provides that nursing home residents have a right to safe, decent, and clean conditions. 40 Tex. Admin.Code Ann. § 19.401(b) (statement of resident rights).

. We further distinguish this case from those in which our sister courts have found a slip and fall by a hospital visitor is not a HCLC. In Christus St. Elizabeth Hospital v. Guillory, 415 S.W.3d 900 (Tex.App.-Beaumont 2013, no pet. h.), the Beaumont court held that a negligence claim against the hospital stemming from injuries sustained when Guillory, a hospital visitor, slipped and fell in liquid on the floor in the common area of the hospital was not a HCLC under the TMLA. Id. at 901. The court noted that “no nexus exists between the claims Guillory asserts in her ... Petition and the hospital’s duties of providing healthcare.” Id. at 902. Further, the hospital “failed to direct the trial court or to direct us to any health care standards governing a hospital’s maintenance or lighting of its halls or buildings.” Id. at 903. Unlike Guillory, this case involves a nexus between Morrison's safety claims and the provision of health care as well as legislative standards governing the facility’s legal duty to provide a safe and sanitary environment for its residents. See also Mejia, 2013 WL 4859592, at *3 (claims did not involve departures from accepted standards of safety directly or indirectly related to health care); cf. Ross v. St. Luke’s Episcopal Hosp., No. 14-12-00885-CV, 2013 WL 1136613 (Tex.App.-Houston [14th Dist.] Mar. 19, 2013, pet. filed) (hospital visitor’s negligence claim following slip and fall on hospital premises was a HCLC to which expert report requirement applies); Tillman v. Mem'l Hermann Hosp. Sys., No. 14-12-01169-CV, - S.W.3d-, -, 2013 WL 5470064, at *3 (Tex.App.-Houston [14th Dist.] Oct. 1, 2013, pet. filed) (negligence action by hospital employee who injured her back while x-raying patient was HCLC, as claims arose from hospital’s alleged failure to adequately hire, train, supervise, and warn employees so as to minimize risks of injury to those employees providing health care services to patients); CHCA Bayshore, L.P. v. Salazar, No. 14-12-00928-CV, 2013 WL 1907888, at *1 (Tex.App.-Houston [14th Dist.] May 7, 2013, pet. filed) (hospital employee's negligence action against hospital for injuries received when attempting to maneuver a patient was a HCLC because "whether the hospital failed to provide proper training, equipment, and supervision for hospital personnel responsible for moving patients so as to avoid or limit injury to the *335 personnel clearly implicates safety as that term was interpreted by the Williams court.”).

. Whispering Pines further contends that Morrison’s claim is one for health care liability because it alleges departures from accepted standards of health care applicable to nursing home facilities. Because we conclude that Morrison’s safety claim is at least indirectly related to health care, we need not address this issue.