COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


|  |  |  |
|---|---|---|
| EAST EL PASO PHYSICIANS MEDICAL CENTER, L.L.C.., | § | No. 08-13-00358-CV |
|  | § | Appeal from the |
| Appellant, | § | County Court at Law No. 5 |
| v. | § | of El Paso County, Texas |
| OLIVIA VARGAS, | § | (TC# 2011-DCV00117) |
| Appellee. | § |  |

## O P I N I O N

Olivia Vargas alleged in the trial court that she was injured after automatic doors at Appellant's hospital malfunctioned and closed on her prematurely. In what would otherwise be a "garden variety" slip-and-fall case, we must determine whether the Texas Medical Liability Act required Vargas to serve Appellant with an expert report on what caused her injuries merely because she sustained them at a hospital. We hold that it did not.

### BACKGROUND

According to her live pleading, Vargas entered onto property owned by Appellant "as a customer." The property housed a state-licensed hospital facility operated by Appellant. The pleadings do not indicate that she actually received any medical care while she was at the hospital. At the time of the alleged accident, Vargas was eighty-one and used a walker to stay

ambulatory. As Vargas exited the building, the automatic doors at the entrance closed on her walker, causing her to fall and sustain injuries. Her medical records indicate that she suffered a humeral head fracture, which is a shoulder injury. Vargas sued, alleging among other things that Appellant failed to remedy a dangerous condition, failed to warn her about a dangerous condition, and failed to set and enforce appropriate safety standards.

After more than 120 days had expired, Appellant moved to dismiss, arguing that Vargas' claim was actually a health care liability claim ("HCLC") under the Texas Medical Liability Act ("TMLA"). As such, Vargas was required to submit an expert report on causation within 120 days of her suit's inception, and her failure to do so was fatal. The trial court denied Appellant's motion to dismiss.

This appeal followed. We have jurisdiction over this interlocutory appeal pursuant to TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(9)(West 2008).

## DISCUSSION

In its sole issue on appeal, Appellant contends that the trial court erred in denying the motion to dismiss because Vargas' allegations touch upon state regulations governing the construction and operation of hospitals. As such, Vargas' claim is not a regular premises liability claim, but is instead a safety-related HCLC because it is premised on violations of the very standards Appellant must meet in order to render health care services in the state of Texas. We disagree that Appellant's administrative regulation argument creates a meaningful distinction between this case and similar premises-liability cases sufficient to bring Vargas' claim within the TMLA's ambit.

### Standard of Review

Whether a pleaded claim is actually an HCLC is a question of statutory construction

2

reviewed *de novo*. *Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). "In construing a statute, our aim is to determine and give effect to the Legislature's intent, and we begin with the plain and common meaning of the statute's words." *Id*. [Internal citations and quotation marks omitted]. Where a statute is unambiguous, "we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "We further consider statutes as a whole rather than their isolated provisions." *Id.* at 439. "We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose . . . ." *Id*. "When possible, each sentence, phrase, clause and word is given effect, so that the statute makes sense as a cohesive whole." *Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001). We "do not treat any statutory language as surplusage, if possible." *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000).

### Applicable Law: Texas Medical Liability Act

In determining whether a claim is an HCLC, the Court considers the record as a whole, the pleadings, and the factual allegations contained therein. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012). An HCLC consists of three elements: (1) the defendant must be either a health care provider or a physician; (2) the plaintiff's claim must concern treatment, lack of treatment, or a departure from the accepted standards of care on one of four predicate grounds ("the Four Breaches"); and (3) the conduct complained of in element two proximately caused the plaintiff's injury or death. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.001(a)(13)(West 2011); *Williams*, 371 S.W.3d at 179-80. The Four Breaches covered by element two include departures from the accepted standards of (a) medical care, (b) health care, (c) safety, and (d) professional or administrative services directly related to health care. TEX.CIV.PRAC.&REM.CODE ANN.

3

§ 74.001(a)(13). A plaintiff "claimant" under the statute does not need to be the patient of a health care provider or physician for her claim to be considered an HCLC. *Williams*, 371 S.W.3d at 179-80.

In assessing whether a claim is an HCLC, the Court looks to the content and not the form of the pleadings to see if the alleged conduct falls within the TMLA's legislated scope. *Williams*, 371 S.W.3d at 178 (court must look to the "gravamen of the claim . . . against the health care provider"). A plaintiff cannot dodge the TMLA's strictures through artful pleading; where a pleaded tort or contract claim constitutes an HCLC, the TMLA's procedural requirements apply regardless of how the claim is recast. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005). The TMLA does not permit "claim splitting." *Yamada v. Friend*, 335 S.W.3d 192, 195-96 (Tex. 2010). Where all claims arise from the same nucleus of operative fact, and some pleaded claims are HCLCs, then the TMLA's procedural requirements must be followed or else all claims arising from the same fact scenario must be dismissed. *Id*. at 195-96.

A defendant is entitled to dismissal with prejudice of any HCLC if a plaintiff fails to serve the defendant with a statutorily-compliant expert report on liability or causation within 120 days of the suit's inception. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(b), (j)(West 2011).

### *Scope of Safety HCLC*

At issue in this case is what constitutes a "safety" HCLC under the TMLA. Appellant correctly notes that in *Williams*, 371 S.W.3d at 185, the Texas Supreme Court read the phrase "directly relating to health care" as not modifying the word "safety" in the statute under the rule of the last antecedent,[1] a reading we are bound to apply[2] but with which we respectfully disagree.

---

[1] The rule of the last antecedent states that "a qualifying phrase should be applied only to the portion of the sentence immediately preceding it." *Williams*, 371 S.W.3d at 185 [Internal citation and quotation marks omitted].

*Accord Psychiatric Solutions, Inc. v. Palit*, 414 S.W.3d 724, 729-30 (Tex. 2013)(Boyd, J., concurring)(noting that the lack of a serial comma between "safety" and "administrative services" suggests that the two phrases constitute one grammatical item in a list and that the phrase "directly related to health care" modifies both "safety" and "administrative services"). This means that under current interpretations of the TMLA, a safety-related claim need not be directly related to health care to constitute an HCLC. *Williams*, 371 S.W.3d at 186.

In the wake of *Williams*, our sister courts are split on the issue of whether the nexus to health care has been jettisoned entirely, or whether a defendant must still prove an *indirect* connection to health care to establish that a plaintiff's claim is really an HCLC. *Compare Williams v. Riverside Gen. Hosp., Inc.*, No. 01-13-00335-CV, 2014 WL 4259889, at *7 (Tex.App.--Houston [1st Dist.] Aug. 28, 2014, no pet. h.)(mem. op.); *Methodist Hosps. of Dallas v. Garcia*, No. 05-13-01307-CV, 2014 WL 2003121, at *2 (Tex.App.--Dallas May 14, 2014, no pet.)(mem. op.); *Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Dewey*, 423 S.W.3d 516, 519 (Tex.App.--San Antonio 2014, pet. filed); *Weatherford Tex. Hosp. Co., L.L.C. v. Smart*, 423 S.W.3d 462, 464 (Tex.App.--Fort Worth 2014, pet. filed); *Christus St. Elizabeth Hosp. v. Guillory*, 415 S.W.3d 900, 902-03 (Tex.App.--Beaumont 2013, pet. filed); *Doctors Hosp. at Renaissance, Ltd. v. Mejia*, No. 13-12-00602-CV, 2013 WL 4859592, at *1, *3 (Tex.App.--Corpus Christi Aug. 1, 2013, pet. filed)(mem. op.); *Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley*, 422 S.W.3d 782, 788 (Tex.App.--Texarkana 2013, pet. denied)(cases holding that slip-and-fall or premises liability cases were not HCLCs); *with E. Tex. Med. Ctr. Reg'l Health Care Sys. v. Reddic*, 426 S.W.3d 343, 348 (Tex.App.--Tyler 2014, pet. filed); *Ross v. St. Luke's*

---

[2] *See Williams v. Riverside Gen. Hosp., Inc.*, No 01-13-00335-CV, 2014 WL 4259889, at *6 (Tex.App.--Houston [1st Dist.] Aug. 28, 2014, no pet.h.)(holding that although the interpretation of the word "safety" in *Williams* was judicial dicta, the court was not free to completely disregard the language).

*Episcopal Hosp.*, No. 14-12-00885-CV, 2013 WL 1136613 (Tex.App.--Houston [14th Dist.] Mar. 19, 2013, pet. granted)(cases holding premises liability claims constituted safety HCLCs).

The interpretation of the word "safety" and whether it encompasses slip-and-fall claims is a question of first impression for this Court. Today, we join our sister courts in the Houston First District, Dallas, Fort Worth, San Antonio, Beaumont, Corpus Christi, and Texarkana in rejecting the premise that the TMLA's safety ground is without limitation. The *Loiasiga* court noted that by its breadth and mechanics, the TMLA essentially creates a presumption that a claim against a health care provider is an HCLC. *Loaisiga*, 379 S.W.3d at 256. Nonetheless, the Texas Legislature did not pass a law stating that *all* suits against health care providers are, in fact, HCLCs whose continued existence hinges on the presentment of an expert report on causation. *Id*.

Instead, the TMLA is limited in scope to the types of claims specifically enumerated in the statute. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.001(a)(13). We "must presume that the Legislature chose its words carefully," *Spradlin*, 34 S.W.3d at 580, particularly when it sets out a specific list of conditions in a statute. *Cf. Rodriguez v. State*, 953 S.W.2d 342, 354 (Tex.App.--Austin 1997, pet. ref'd)(under statutory maxim *expresio unius est exclusio alterius*, legislature's inclusion of specific words in a statutory list limits application of the statute to the included terms and nothing more). Reading the word "safety" as being "without limitation" threatens to swallow up the statute in its entirety and render the specifically enumerated class of carefully selected claims essentially meaningless by opening a back door through which virtually any claim could be captured. *See Williams*, 371 S.W.3d at 198-99 (Lehrmann, J., dissenting). We must interpret the statute as a whole, and in a way that gives meaning to all its words, not just one word read in isolation. *Combs*, 340 S.W.3d at 439, *Spradlin*, 34 S.W.3d at 580. The more

6

natural reading of safety in its statutory context—a reading that gives meaning to all HCLCs listed in Section 74.001(a)(13)—is the one espoused by our seven sister courts. If a claim is wholly untethered from the rendition of health care, it is not, by definition, a safety-related HCLC. *Twilley*, 422 S.W.3d at 789.

This reading also comports with the Texas Supreme Court's previous interpretations of the word safety. In determining that certain classes of assault claims were not HCLCs, the court in *Loaisiga* stated that the Legislature could not have intended to apply the expert report requirement to cases "where the conduct of which a plaintiff complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of medical care, or health care, or safety or professional or administrative services directly related to health care even though the conduct occurred in a health care context." *Loaisiga*, 379 S.W.3d at 257 [Internal quotation marks omitted]. *Loaisiga* makes clear that where "the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare [is] the healthcare setting[,]" "the defendant's status as a doctor or health care provider, or both[,]" the claim is not an HCLC. *Id.* at 256; *accord Reddy v. Veedell*, No. 01-14-00309, 2014 WL 4651211, at *3 (Tex.App.--Houston [1st Dist.] Sept. 18, 2014, pet. filed)(distracted driver defendant who collided with bicyclist plaintiff not entitled to TMLA expert report merely because defendant was a doctor). As such, we hold that a claim only becomes a safety-related HCLC where the claim is indirectly tethered to the rendition of health care, i.e., where the relationship between the claim and the rendition of medical services is more than mere situs of injury or the defendant's status as a health care provider.

### *Administrative Regulation as an "Indirect" Connection to Health Care*

Having established that the safety ground does not convert all conceivable safety claims

into HCLCs, we turn to the specifics of the argument at bar. Vargas points out that in nearly every jurisdiction that follows the indirect nexus approach to safety HCLCs, ordinary premises liability claims divorced from the rendition of health care do not fall within the TMLA's scope. Appellant concedes that our sister courts have found that cases similar to this one are not safety HCLCs, including one case in which a non-patient was also injured by automatic doors. *See Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Dewey*, 423 S.W.3d 516 (Tex.App.--San Antonio 2014, pet. filed). However, Appellant counters that the cases from our seven sister courts are distinguishable. Here, Appellant advances the new argument that Vargas' live pleadings essentially allege violations of the web of regulations that affect the safety and operation of hospitals. Because the safety standards pertinent to Vargas' claim are in many respects set by regulation, and since Appellant's continued licensure and ability to operate a hospital, i.e. render health care, are predicated on compliance with those regulations, Vargas' claims are, in fact, safety claims indirectly related to health care.

Appellant's argument holds some appeal at first blush, given the pervasiveness of hospital regulation. Appellant explains that a hospital must be licensed by the State before it may operate and render health care services. *See* TEX.HEALTH & SAFETY CODE ANN. § 241.021 (West 2010). As part of its licensing requirements, the hospital must also abide by regulations promulgated by the Department of State Health Services. 25 TEX.ADMIN.CODE §§ 133.1-133.169 (West 2014)(Tex. Dep't of State Health Servs., Hospital Licensing). Those regulations mandate among other things that a hospital create a multidisciplinary safety committee consisting of people selected by the hospital's chief executive officer. 25 TEX.ADMIN.CODE § 133.142(a)(West 2014)(General Safety). The committee, led by a "safety officer" also selected by the CEO, is responsible for developing, implementing, and enforcing safety policies and

8

procedures, including a reporting system, new employee safety orientations, and continuing education requirements, for every department and hospital service. 25 TEX.ADMIN.CODE § 133.142(a)(3)(A)-(C).

The regulations also set construction guidelines and requirements for hospital buildings already in existence as of June 21, 2007, as well as those constructed or modified after that date. *See* 25 TEX.ADMIN.CODE § 133.161 (requirements for building in which existing licensed hospitals are located); 25 TEX.ADMIN.CODE § 133.162 (new construction requirements). The regulations for new constructions state that "[a] physical environment that protects the health and safety of patients, personnel, and the public shall be provided in each hospital." 25 TEX.ADMIN.CODE § 133.162(d)(1)(A). Compliance with the Americans with Disability Act and other federal regulations is mandatory. 25 TEX.ADMIN.CODE § 133.162(d)(1)(D). The regulations even control general detail and finish requirements, 25 TEX.ADMIN.CODE § 133.162(d)(2)(A)(vi), including a subsection devoted entirely to sliding doors. *See* 25 TEX.ADMIN.CODE § 133.162(d)(2). Per regulation, "[t]he force required to operate the door in the direction of door travel is not more than 30 pounds per foot to set the door in motion and is not more than 15 pounds per foot to close the door or open in the minimum required width." *Id*. The doors are also subject to numerous other requirements. *Id*.

Appellant asserts that each of Vargas' negligence allegations takes aim in some way at Appellant's compliance with these regulations, challenging the efficacy of Appellant's safety committee, its directives, and the operation of the premises. While Appellant's argument is novel, we are not completely without guidance on the role regulatory violations play in the safety HCLC analysis. In *Twilley*, our sister court in Texarkana held that a similar premises liability claim predicated on violation of Occupational Safety and Health Administration ("OSHA")

9

regulations was not a safety HCLC. *Twilley*, 422 S.W.3d at 789. There, a hospital employee sustained two workplace-related injuries: falling off a ladder, and tripping over a mound of hardened concrete. *Id.* at 783. The Texarkana court held that the OSHA claims did not relate at all to the provision of health care, and that even under an indirect connection approach to safety, a health care defendant still needed to establish "a more logical, coherent nexus to health care" than was presented on the facts of that case. *Id.* at 788-89. As such, the statute did not require an expert report from the plaintiff before the suit could proceed. *Id.*

Although the case dealt with OSHA regulations governing workplace safety and not state hospital licensing regulations, *Twilley* is similar enough to help ground our analysis. Vargas' pleaded claims may touch upon or implicate hospital licensure regulations, but *Twilley* makes clear that the existence of an on-point safety regulation does not automatically convert a claim into a safety HCLC, nor should it. Indeed, pegging the already broad safety definition to regulatory compliance violations risks opening the door to a scavenger hunt of the Texas Administrative Code and would create a morass of uncertainty and needless litigation in what is already a confused area of law. *See Loaisiga*, 379 S.W.3d at 264 (Hecht, J., concurring and dissenting)(noting that disagreements over TMLA expert report requirement that was originally intended to reduce cost and "weed out frivolous claims early on[] ha[s] resulted in protracted pretrial proceedings and multiple interlocutory appeals, threatening to defeat the Act's purpose by increasing costs and delay that do nothing to advance claim resolution").[3]

We find no authority indicating that we must resort to administrative regulations in

---

[3] We recognize that under a "professional or administrative services" HCLC, resort to regulations is required, since the services defined therein are "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." However, unlike a safety HCLC which must be indirectly tethered to health care, a professional or administrative services HCLC may only be brought when those services are *directly* related to health care. *See* TEX.CIV.PRAC.&REM.CODE ANN. §74.001(a)(24).

determining whether the gravamen of the plaintiff's claim is a safety claim. Further, the plain text of the statute does not make reference to hospital licensing regulations as a component of safety claims. *Cf.* TEX.CIV.PRAC.&REM.CODE ANN. § 74.001(a)(24)(defining "professional or administrative services" HCLCs as requiring resort to those duties or services required "as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification . . . ."). As such, *Twilley*'s ultimate holding is instructive and properly frames the inquiry. The question here is not whether the licensing board or some other governmental body has regulated that particular aspect of a hospital's construction or operation. The question is whether the plaintiff alleged that the health care provider defendant breached safety standards indirectly related to health care.

Case law from our sister courts makes clear that slip-and-fall claims such as this one are not even indirectly related to health care. *See*, *e.g.*, *Dewey*, 423 S.W.3d at 519 (hospital visitor on crutches who was injured when automatic door closed did not present HCLC). From a procedural perspective, "there should be [no] difference between a safety claim occurring in the lobby of a department store, bakery, or lawyer's office and a safety claim occurring in the lobby of a health care provider when health care services are not involved." *Smart*, 423 S.W.3d at 467. Because Vargas' personal injury claims arose in a context completely divorced from the rendition of health care, the TMLA did not apply to those claims. The trial court properly denied Appellant's motion to dismiss.[4]

Issue One is overruled. The judgment of the trial court is affirmed.

November 7, 2014

YVONNE T. RODRIGUEZ, Justice

---

[4] Because we hold that denial of dismissal was not error, we decline to reach the constitutional arguments Vargas raised as unnecessary to the resolution of this appeal. TEX.R.APP.P. 47.1.

Before McClure, C.J., Rodriguez, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge, sitting by assignment)