

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00025-CV

_____

CAROLYN WATSON, Appellant

V.

GOOD SHEPHERD MEDICAL CENTER, Appellee

On Appeal from the County Court at Law #2
Gregg County, Texas
Trial Court No. 2013-1958-CCL2

Before Morriss, C.J., Moseley and Carter*, JJ.
Opinion by Chief Justice Morriss
Concurring Opinion by Justice Moseley

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

# OPINION

Once again, we find ourselves on the difficult terrain of trying to determine when, under the Texas Medical Liability Act (TMLA or Act), a safety claim is a health care liability claim (HCLC) for which an expert report must be served on the health care provider defendant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2014).

Carolyn Watson accompanied her daughter and grandson to the emergency department of Good Shepherd Medical Center in Longview (Good Shepherd) in 2012 because the grandson required emergency medical care. On the trio's arrival in the emergency department, they were ushered into a recently mopped triage room where Watson allegedly slipped and fell on the wet floor, "shattering her patella and necessitating her own emergency surgery." Watson sued Good Shepherd for her injuries, alleging that Good Shepherd failed to warn her of the wet floor. Watson further alleged that "the activity of purposefully placing water onto the floor and leaving it in a wet condition, coupled with the failure to put up any sign or warn [her] . . . proximately caused [her] injuries."

Good Shepherd sought dismissal under Chapter 74 of the Texas Civil Practice and Remedies Code on the basis that Watson's claim was a HCLC and was unsupported by an expert report served on Good Shepherd as required by the Act. *See id.* The trial court granted the motion and dismissed Watson's suit. Because we conclude that the claim here is not a HCLC, we reverse the judgment of the trial court.

2

The determination of whether this claim falls within the purview of the Act is a question of law and is thus reviewed de novo. *Tex. W. Oaks Hosp., LP & Tex. Hosp. Holdings, LLC v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012).

A Section 74.351 expert report is required in all HCLCs. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). A HCLC is

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(13) (West Supp. 2014).

The Texas Supreme Court has determined that the statutory phrase "directly related to health care" does not refer to "safety." *Williams*, 371 S.W.3d at 186. Consequently, "the safety component of HCLCs need not be directly related to the provision of health care." *Id*. Further, "the lack of a health care relationship between the claimant and the health care provider is not a barrier to the inclusion of a claim within the Legislature's definition of health care liability claims." *Good Shepherd Med. Ctr.–Linden v. Twilley*, 422 S.W.3d 782, 785 (Tex. App.—Texarkana 2013, pet. denied) (citing *Williams*, 371 S.W.3d at 179).

In *Twilley*, this Court determined that a safety claim must have at least an indirect relationship to health care in order for the claim to be one for health care liability. *Id*. at 785–86. We contrasted the facts in *Williams* with those in *Twilley*, observing that the safety claims in *Williams* "were more closely connected to health care than simply arising in a health care context" because the claims there implicated safety standards required for working with

3

potentially violent schizophrenic patients at a mental health hospital. *Id*. at 786. In contrast, Twilley was not a recipient of health care at the time of his injury, and his position with the hospital as director of plant operations did not involve health-care-related judgments or require him to report to a health care provider. *Id*. Instead, "[t]he gravamen of Twilley's claims . . . [was] unrelated to the provision of health care to the patient population or to anyone else." *Id*.

This Court further observed that, "if *every* safety claim against a health care provider were considered a health care liability claim, there would be no need to analyze the nature of the acts or omissions which caused the alleged injuries" as directed by *Williams*. *Id*. at 788; *see Williams*, 371 S.W.3d at 176 ("In seeking to distinguish ordinary negligence claims from HCLCs, the heart of these cases lies in the nature of the acts or omissions causing claimants' injuries and whether the events are within the ambit of the legislated scope of the TMLA.").

In accordance with *Twilley*, for the claim to be a HCLC, there must be some connection, even if indirect, between Watson's safety claim and the provision of health care. Our task, therefore, is to determine whether Watson's claim is at least indirectly related to health care, or whether it is merely a claim of ordinary negligence, essentially untethered from health care. Because (1) the facts presented here are not governed by *Morrison*[1] and (2) the gravamen of Watson's claim is untethered from health care, the TMLA does not require an expert report.

*(1)     Morrison Does Not Apply to the Facts Presented Here*

*Morrison* involved a nursing home employee who brought a premises liability action against a nursing home, seeking to recover for her injuries after she slipped and fell in the

---

[1]*Morrison v. Whispering Pines Lodge I, L.L.P.*, 428 S.W.3d 327, 329 (Tex. App.—Texarkana 2014, pet. filed).

resident shower area, which had recently been mopped by another employee. *Morrison*, 428 S.W.3d at 329. The primary issue in *Morrison* was whether the employee's claim was one for ordinary negligence, or whether her claim was one for health care, thus necessitating the production of an expert report in accordance with Section 74.351. *Id.* at 329–30; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). Citing *Williams*, we stated that, "in distinguishing ordinary negligence claims from HCLCs, the court must look to 'the nature of the acts or omissions causing claimant's injuries and whether the events are within the ambit of the legislated scope of the TMLA." *Morrison*, 428 S.W.3d at 330 (quoting *Williams*, 371 S.W.3d at 176).

In our analysis of these issues, we analogized the facts of *Morrison* to those presented in *Omaha Healthcare Center, LLC v. Johnson*, 344 S.W.3d 392 (Tex. 2011), in which a nursing-home resident was bitten by a brown recluse spider and died. Johnson alleged that Omaha "failed to maintain the premises in a safe condition by failing to inspect the premises, failing to properly clean the premises, failing to institute proper pest control policies, and failing to prevent insect and spider infestations." *Id.* at 395. The court concluded that Johnson's claim was a safety claim directly related to health care and was therefore a health care liability claim. In arriving at this conclusion, the court recognized that nursing homes "are required to take actions to provide 'quality care' which includes things such as safety of the environment." *Id.* (citing Tex. Health & Safety Code Ann. § 242.001(a)(1), (8) (West 2010)). Moreover, services provided to nursing home residents include meeting the residents' fundamental needs. Meeting residents' fundamental needs necessarily includes the protection of their health and safety. *Id.* at

5

394–95 (citing 40 TEX. ADMIN. CODE ANN. § 19.1701) (West, Westlaw current through 2013); 40 TEX. ADMIN. CODE ANN. § 19.401(b) (West, Westlaw current through 2013)).

Because *Morrison* involved a claim against a nursing home, as in *Johnson*, we reasoned that Whispering Pines was subject to similar regulation as in that case. *Morrison*, 428 S.W.3d at 334. "As in *Johnson*, Whispering Pines was required by Texas law to provide a safe and clean environment for its residents." *See* TEX. HEALTH & SAFETY CODE ANN. § 242.001(a)(1), (8); 40 TEX. ADMIN. CODE ANN. §§ 19.1701, 19.401(b). *Id.* The nursing home "was attempting to carry out its legal duty to provide a sanitary environment for its residents" in accordance with state law. *Id.* at 334–35. Accordingly, we determined that, "[b]ecause Morrison's safety claim was at least indirectly connected to what can be classified as actions involving health care," her claim was a HCLC. *Id.* at 334.

We do not believe, however, that the nature of Watson's claim resulting from a fall in the triage room of the hospital's emergency department should be controlled by *Morrison*. *Morrison* was a nursing home case focusing on Whispering Pine's compliance with regulations governing nursing homes, as these regulations brought Morrison's claims within the ambit of the TMLA. "Unlike *Twilley*, we cannot say Morrison's safety claim is totally untethered from health care, since the State of Texas requires Whispering Pines to provide housekeeping services and a safe, clean, and sanitary environment to its residents." *Id.* Nursing home residents, unlike hospital patients, are generally long-term residents of the facility. As such, the nursing home setting is fundamentally distinct from that of a hospital. In recognition of this reality, the Legislature—as recognized in *Johnson* and in *Morrison*—has taken steps to ensure that the living environment

6

for such residents meets certain required, minimum standards in order to protect the health, safety, welfare, dignity, and rights of each resident. Due to the unique status of nursing homes as residential facilities, we limit the holding of *Morrison* to the facts presented in that case and decline to apply it to the current case.

*(2)     The Gravamen of Watson's Claim Is Untethered from Healthcare*

Good Shepherd does not contend that any particular hospital regulations provide a sufficient nexus to health care to render Watson's claim one for health care liability.[2]  Instead, Good Shepherd contends that the location of the fall is the key factor in determining whether Watson's claim is for health care liability.

Good Shepherd reasons that its decision to clean the triage room floor is not a simple decision, because it is one that implicates the discretion of a health care provider.  That is, patients require a clean, infection-free room in which to undergo the triage process.  When the triage room floor is mopped, however, that triage room is taken out of service for a period of time, due to the wet floor.  Or, as in this case, the decision is made to bring the patient into triage while the floor is still wet.  Good Shepherd contends that "the decision to clean the triage room not only implicates health care because the room is out of service while it is cleaned but also because it implicates potential medical exposure to patients."  Accordingly, a proper evaluation

---

[2] Good Shepherd has not suggested any specific regulatory provisions relating to how or when a hospital must mop its floors.  In a case involving state regulations governing the construction and operation of hospitals, the Eighth Court of Appeals recently rejected the contention that such regulations transformed a visitor's slip-and-fall claim into one for health care liability. *E. El Paso Physicians Med. Ctr., L.L.C. v. Vargas*, No. 08-13-00358-CV, 2014 WL 5794622, at *1 (Tex. App.—El Paso Nov. 7, 2014, pet. filed).  In *Vargas*, the court acknowledged that, even though the claims may touch upon or implicate hospital licensure regulations . . . *Twilley* makes clear that the existence of an on-point safety regulation does not automatically convert a claim into a safety HCLC, nor should it." *Id*. at *5.

7

of the hospital's responsibility for a wet floor in the triage area is, according to Good Shepherd, inseparable from health care.

In support of this proposition, Good Shepherd argues that similar conduct was sufficient in *Williams* to fall within the statutory definition: a hospital physician made a decision regarding the level of supervision for a psychiatric patient, and the injury to a non-patient implicated the standards of health care. *Williams*, 371 S.W.3d at 181–82. We disagree. *Williams* involved the *medical judgment* of a physician. Here, nothing suggests a medical decision was involved in when or how to mop the floor of the triage room. We reject Good Shepherd's contention that Watson's claim is directly related to health care.

Alternatively, Good Shepherd takes the position that Watson's claim is at least indirectly related to health care. This contention is based on the premise that the decision to remove a triage room from service for mopping exposes the hospital to health care liability claims in the circumstance a patient is not quickly triaged. Conversely, the typical slip-and-fall case involves businesses that do not risk claims for taking a portion of the business out of service for cleaning. Good Shepherd thus contends this is not a "garden-variety" slip-and-fall case. We also disagree with this argument. Triage room floors, like all hospital floors, must be regularly mopped; we see nothing unique about that process. Moreover, Good Shepherd has not cited any instances in which a hospital has been sued because a triage room was temporarily taken out of service for the purpose of mopping.

Good Shepherd next contends that Watson's claim is at least indirectly related to health care because patients in a triage room should be protected from harm. That is, an injury could

8

befall a patient if the triage room has a wet floor. In support of this contention, Good Shepherd relies on *Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525, 527 (Tex. 2011). In *Ollie*, a hospital patient slipped and fell on a wet bathroom floor during post-operative confinement. *Id*. at 525. The court characterized Ollie's claim as one that "centers on the failure of [the hospital] to act with a proper degree of care to furnish a dry floor, warn her of the hazards of a wet bathroom floor, or some similar failure to act." *Id*. at 527. Because Ollie's action was "a safety claim directly related to services meeting her fundamental needs [as a patient]," it was a health care liability claim. *Id*.

Because Watson's claim has nothing to do with having her fundamental needs met by the hospital, *Ollie* does not support Good Shepherd's "locale" argument. Good Shepherd nevertheless contends that (1) the triage room is for patient care, (2) if the triage room is unsafe, the patient could be injured, (3) if the patient could be injured in the triage room due to a wet floor, the hospital has failed to meet the patient's fundamental need for safety, therefore, (4) if a visitor is injured in an area intended for patient care, the breach of safety standards is sufficiently related to the provision of health care to render the claim one for health care liability.

This analysis—premised almost entirely on the location within the hospital where a patient is expected to receive diagnosis or treatment—is, in our opinion, unworkable and would lead to inconsistent and illogical results. Under Good Shepherd's reasoning, a visitor's injury claim resulting from a fall in the triage room is one for health care liability, as this is an area intended for patient care. A visitor who slips and falls on a wet floor in the waiting room just outside of the triage room would not, however, present a health care liability claim because

9

patient care does not take place in the waiting room. This type of analysis would result in procedural difficulties as well, because it potentially calls for the resolution of fact questions in close cases. The determination of whether a claim is one for health care liability, though, is a legal question. Perhaps more importantly, this type of analysis tends to blur, rather than clarify, the distinction between safety claims that are unrelated to health care and those that are indirectly related to health care. *See Twilley*, 422 S.W.3d at 785–86.

Instead of drawing geographical lines within the hospital to determine whether a claim is one for health care liability, we look to the gravamen of the claim presented as directed by our high court. *Williams*, 371 S.W.3d at 178; *see Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005). That is, we examine the "nature of the acts or omissions causing claimants' injuries and whether the events are within the legislated scope of the TMLA." *Williams*, 371 S.W.3d at 176. Here, Watson was injured because the triage room floor was recently mopped and she was not warned of the floor's wet condition. As in *Twilley*, this claim's only relation to health care is that "it arose on the premises of a health care provider." *Twilley*, 422 S.W.3d at 784. Watson's allegations present nothing more than an ordinary premises liability claim.

Indeed, the majority of our sister courts have, in reliance on *Twilley*, concluded that hospital visitor slip-and-fall claims due to wet floors and other obstacles are not health care liability claims because such safety claims are not even indirectly related to health care. *See E. El Paso Physicians Med. Ctr., L.L.C. v. Vargas*, No. 08-13-00358-CV, 2014 WL 5794622, at \*6 (Tex. App.—El Paso Nov. 7, 2014, no pet. h.) (because non-patient who was knocked to floor by

10

hospital's automatic entrance doors presented personal injury claim in context divorced from rendition of health care, TMLA did not apply); *Williams v. Riverside Gen. Hosp., Inc.*, No. 01-13-00335-CV, 2014 WL 4259889, at *7 (Tex. App.—Houston [1st Dist.] Aug. 28, 2014, no pet. h.) (mem. op.) (following *Twilley*, holding gravamen of Williams' claims that she tripped over extension cord on one occasion and slipped and fell on wet floor on another occasion were "completely untethered from the provision of health care" and that provision of expert report would "amount to an exercise in futility"); *Rio Grande Reg'l Hosp. v. Salinas*, No. 13-13-00557-CV, 2014 WL 3805141, at *4 (Tex. App.—Corpus Christi, July 31, 2014, pet. filed) (mem. op.) (following *Twilley*, holding visitor's slip-and-fall claim on hospital's wet floor was not HCLC because such claim was "'completely untethered from health care'" (quoting *Twilley*, 422 S.W.3d at 788)); *Columbia Med. Ctr. of Denton Subsidiary, L.P. v. Braudrick*, No. 02-13-00399-CV, 2014 WL 2144877, at *2 (Tex. App.—Fort Worth May 22, 2014, pet. filed) (mem. op.) (following *Smart* and majority of sister courts that have addressed this issue, holding that hospital visitor who stepped in hole while walking on median in hospital parking lot and fell did not assert health care liability claim); *Weatherford Tex. Hosp. Co., LLC v. Smart*, 423 S.W.3d 462 (Tex. App.—Fort Worth 2014, pet. filed) (following *Twilley*, holding gravamen of hospital visitor's claim who slipped on puddle of water in hospital lobby was slip and fall, implicating "question of whether there should be a difference between a safety claim occurring in the lobby of a department store, bakery, or lawyer's office and a safety claim occurring in the lobby of a health care provider when health care services are not involved"); *Methodist Healthcare Sys. of San Antonio, Ltd., LLP v. Dewey*, 423 S.W.3d 516, 519–20 (Tex. App.—San Antonio 2014, pet.

filed) (following *Mejia* and *Twilley*, holding gravamen of Dewey's claim, resulting from being knocked to ground when electronic door closed on him while visiting patient, was not HCLC); *Baylor Univ. Med. Ctr. v. Lawton*, 442 S.W.3d 483, 486–87 (Tex. App.—Dallas 2013, pet. filed) (following *Twilley*, holding employee's claim against hospital for injuries sustained when raw sewage backed up into hospital's showers and sinks was not HCLC because gravamen of claim was unrelated to provision of health care; as in *Twilley*, "it would be difficult, if not impossible, to find a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care for plumbing"); *Christus St. Elizabeth Hosp. v. Guillory*, 415 S.W.3d 900, 902–03 (Tex. App.—Beaumont 2013, pet. filed) (holding that gravamen of Guillory's claim for injuries sustained from fall on liquid on floor in hospital hallway "is that the hospital breached standards of ordinary care to a visitor present in a common area of the hospital, a duty that is no different than the duties imposed on other businesses that permit visitors to be present on their premises"); *Doctors Hosp. at Renaissance, Ltd. v. Mejia*, No. 13-12-00602-CV, 2013 WL 4859592, at *3 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. filed) (mem. op.) (safety claim must "'involve a more logical coherent nexus to health care'" than the "'simple fact that an injury occurred on a health care provider's premises'") (quoting *Twilley*, 422 S.W.3d at 788).

Our conclusion that Watson has not presented a health care liability claim is buttressed by our holding in *Twilley* and the holdings of the majority of our sister courts. This conclusion is also consistent with the rationale underlying the requirement of an expert report in health care liability cases. The Texas Supreme Court has stated that the purpose of the expert-report requirement is to "identify frivolous claims and reduce the expense and time to dispose of any

that are filed." *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012). The expert-report requirement is not intended to dispose of claims regardless of their merits. *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011). In requiring expert reports, the "Legislature's goal was to deter baseless claims, not to block earnest ones." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013). The legislative intent underlying the expert-report requirement is not advanced by requiring an expert report in simple slip-and-fall cases occurring on hospital premises. *See Salinas*, 2014 WL 3805141, at *3 (expert report in premises liability case does not deter frivolous claims or provide basis to conclude claim has merit) (citing *Potts*, 392 S.W.3d at 631).

Because Watson did not present a health care liability claim, dismissing her claims was error.

We reverse the judgment and remand this case to the trial court for further proceedings consistent with this opinion.[3]

Josh R. Morriss, III
Chief Justice

---

[3]Because we conclude that Watson's claim is not a HCLC, we need not address her contention that the expert report requirement, as applied to her, violates the Texas Open Courts provision of the Texas Constitution.

CONCURRING OPINION

One of the great values found in the rule of stare decisis is that people can look to decisions arising from past situations in order to guide their footsteps in the future. The majority opinion here is a very scholarly and able attempt to draw a bright distinctive line between a health care liability claim and a simple "garden-variety" slip and fall case. Unfortunately, the ambiguity of the legislative acts being construed and the uncertainty of the decisions issued by the Texas Supreme Court on the particular cases involving the legislation leaves the attorneys who handle these kind of cases, the trial judges, the appellate courts, the health care providers, and the populace as a whole scratching their collective heads when attempting to discern the difference.

One can hardly deny that if the person who fell in the triage room was the patient (and not the patient's grandmother), the claim would almost certainly fall within the category of a health care liability claim. Thinking that way, the ordinary man might deduce that the bright red line would surely be the identity of the person who suffers the injury. However, the Legislature plainly rejected that solution by changing the wording in the statute to "claimant" as opposed to the word "patient" as had previously been in the law. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13) (West Supp. 2014); *Tex. W. Oaks Hosp., L.P. v. Williams,* 371 S.W.3d 171, 179 (Tex. 2012)

On the other hand, a layman might believe that the existence of a health care liability claim may hinge on the identity of a person making the decision that resulted in damage. In other words, if a health care provider made a decision that resulted in damage to a person, then

14

the damage would fall within the category of a health care liability claim. But that would not really apply because what health care provider makes the decision as to the appropriate time to call an exterminator to eradicate brown recluse spiders? *Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 395 (Tex. 2011).

One might logically think that geography would have some importance in making such a decision (This seems to be the position most strongly espoused by Good Shepherd, which also points out that the decision when to mop the floor of a triage room and when to return that room to service involves some measure of a decision by a health care provider.). But what about the hall leading to the triage room? What would be the result if the claimant tripped on bandages which were carelessly strewn on the floor of the hall by health care providers and not promptly removed? If the fall takes place precisely in the doorway between the hall and the triage room, which geographical determination applies? Does it make a difference if the person who tripped was the person seeking the provision of health care or the care seeker's grandmother, who brought the patient there for service?

This concurring opinion commences with my observation that the majority opinion is both scholarly and able. It is truly as workmanlike and as precise as the law which it construes will permit. I can think of no better way—given the status of the legislation and the opinions of the Texas Supreme Court—to define the issue and to settle the question. However, just about as good a case can be justified for the opposite result as the outcome set out in the majority opinion. For the sake of the general public, I would call upon those who have more power than the

15

intermediate appellate courts possess to somehow resolve this question in some way that is easily discernable.  There is a need for a "bright red line" for the public and the profession to employ.


                                                    Bailey C. Moseley
                                                    Justice

Date Submitted:        November 10, 2014
Date Decided:          January 15, 2015